# PRELIMINARY JURY INSTRUCTIONS

Members of the jury:  Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and your role as jurors.

## I.   The Nature of the Action and the Parties

This is a patent infringement case.  In this case, WhitServe LLC ("WhitServe"), the plaintiff, is asserting that Computer Packages, Inc. ("CPi"), the defendant, is infringing four of WhitServe's patents.  CPi denies that any of its products or services infringe the WhitServe patents.  CPi further maintains the patents are invalid and unenforceable.  Three of WhitServe's patents relate to computer systems for providing professional services over the Internet.  One of WhitServe's patents relates to a data backup system for Internet-based data processing.  During the trial, the parties will offer testimony to familiarize you with this technology.

The four patents which are the subject of this case are identified as follows:

Patent Office number: 5,895,468 (which may be called "the '468 patent"), entitled "System for Automating Delivery of Professional Services";

Patent Office number: 6,049,801 (which may be called "the '801 patent"), entitled "Web Site Providing Professional Services";

Patent Office number: 6,182,078 (which may be called "the '078 patent"), entitled "System for Delivering Professional Services Over the Internet"; and

Patent Office number: 6,981,007 (which may be called "the '007 patent") "Onsite Backup for Internet-Based Data Processing."

The '468, '801, '078, and '007 patents may also collectively be referred to as the "WhitServe patents."

## A. United States Patents

[**WhitServe proposes including:** A valid United States patent gives its owner the right to exclude others from making, using, offering to sell, or selling the patented invention or a product made by the patented process within the United States or importing it into the United States.]   Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO"). During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a general background here.

To obtain a patent, an application for a patent must be filed with the PTO.  The application includes a specification, which must have a written description of the invention telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so.  The specification must also describe what the inventor believed at the time of filing to be the best way of making his or her invention. The specification concludes with one or more numbered sentences.  These are the claims. The purpose of the claims is to particularly point out what the applicant regards as the invention.

An application for a patent is reviewed by a trained PTO examiner who is oftentimes educated in the technical area of the patent application.  The examiner reviews (or examines) the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner searches records available to the PTO for what is

referred to as "prior art," and he or she also reviews prior art submitted by the applicant. The prior art is defined by statute and, when the parties are done presenting evidence, I will give you specific instructions as to what constitutes prior art in this case. But generally it is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the filing date of the patent application. The patent examiner considers, among other things, whether each claim defines an invention that is new, useful and not obvious in view of this prior art.

Following the prior art search and examination of the application, the patent examiner advises the applicant in writing what the patent examiner has found and whether he has "allowed" any claim. This writing from the patent examiner is called an "office action." More often than not, the initial office action by the patent examiner rejects the claims. The applicant then responds to the office action and sometimes changes the claims or submits new claims. This process may go back and forth between the patent examiner and the applicant for several months or even years until the patent examiner is satisfied that the application and claims are patentable.

The collection of papers generated by the patent examiner and the applicant during this time of corresponding back and forth is called the "prosecution history." This history of written correspondence is contained in a file in the PTO, and consequently some people call this prosecution history the "file history" or the "file wrapper."

### B.  Patent Litigation

Someone is said to be infringing on claims of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the patented invention or perform the patent method, as defined by the claims, within the United

States before the term of the patent expires.  A patent owner who believes someone is infringing on the exclusive rights of the patent may bring a lawsuit like this to stop the alleged infringing acts and recover damages.  The patent owner has the burden to prove infringement of the claims of the patent.  The patent owner also has the burden to prove damages caused by that infringement, which are adequate to compensate for the infringement.

**<u>WhitServe Proposes</u>**

A person sued for allegedly infringing a patent can deny infringement and also can defend by proving the asserted claims of the patent are invalid or by proving the asserted claims of the patent are unenforceable.  The accused infringer has the burden to prove invalidity or unenforceability by clear and convincing evidence.  In evaluating infringement or invalidity, each claim is to be evaluated independently.

I will now briefly explain the parties' basic contentions in more detail.


**<u>CPI Proposes</u>**

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent is valid and enforceable, although the law requires a presumption of validity and enforceability.  The PTO, for example, may not have considered prior art that will be presented to you.  A person sued for allegedly infringing a patent can deny infringement and also can defend by proving the asserted claims of the patent are invalid or by proving the asserted claims of the patent are invalid or unenforceable.  The accused infringer has the burden to prove invalidity or unenforceability by clear and convincing

evidence.  In evaluating infringement or invalidity, each claim is to be evaluated independently.

I will now briefly explain the parties' basic contentions in more detail.


## II.  Contentions of the Parties

WhitServe contends that CPi makes, uses, offers to sell, or sells products that infringe one or more claims of the WhitServe patents. WhitServe has the burden of proving that CPi infringes the WhitServe patents by a preponderance of the evidence. That means that WhitServe must show that it is more likely that CPi infringes than it does not.  **[WhitServe proposes "CPi or its customers" as WhitServe asserts that CPi is liable for induced infringement, contributory infringement, and is joint and severally liable for acts of infringement by CPi's customers.]**


**WhitServe Proposes:**

Specifically, WhitServe contends that CPi or its customers infringe the WhitServe patents by making, using, offering for sale, and selling the following CPi products:

> (1) the Electronic Annuity Reminder System (which may be called "Desktop EARS"),
>
> (2) the Trademark Electronic Reminder Management System (which may be called "TERMS"),
>
> (3) CPi Online (which is referred to simply as "CPi Online"),
>
> (4) Hosted Ears Web-based Version (which is referred to as "Hosted EARS'), and

(5) PMS Read-Write Hosted System (which is referred to as "Hosted PMS').

WhitServe contends that CPi's infringement of the WhitServe patents is willful.

WhitServe seeks damages caused by CPi's and its customer's infringement in the form of a reasonable royalty of revenue generated by the infringing CPi products.

In response to WhitServe's contentions, CPi denies that it is infringing the WhitServe patents.  CPi also contends that the WhitServe patents are invalid.  CPi bears the burden of proving invalidity by clear and convincing evidence, or in other words that it is highly probable that the claims are invalid.

CPi also contends that the WhitServe patents are unenforceable.  CPi bears the burden of proving unenforceability by clear and convincing evidence, or in other words that it is highly probable that the WhitServe patents are unenforceable.


**<u>CPI Proposes</u>**

There are two ways in which a patent claim can be directly infringed.  First, a claim can be literally infringed.  Second, a claim can be infringed under what is called the "doctrine of equivalents."  To determine literal infringement, you must compare the accused product with each claim that WhitServe asserts is infringed.  It will be my job to tell you what the patent claims mean.  You must follow my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if CPi's products include each and every element in that patent claim.  If CPi's product does not contain one or more element in that claim, CPi does not literally infringe that claim.  You must determine literal infringement with respect to each patent claim individually.

Under the doctrine of equivalents, you may find that CPi's products infringe a claim of the WhitServe patents even if not every element of that claim is present in CPi's product. However, to do so, you must find that there is an equivalent component in CPi's product for each element of the patent claim that is not literally present in CPi's product. WhitServe has the burden of proving by a preponderance of the evidence that CPi's products contain the equivalent of each element of the claimed invention that is not literally present in the allegedly infringing product.

CPi denies that it is infringing the WhitServe patents. CPi also contends that the WhitServe patents are invalid and unenforceable.

Invalidity is a defense to infringement. Therefore, even though the PTO examiner has allowed the claims of the WhitServe patents, you, the jury, have the ultimate responsibility for deciding whether the claims of the WhitServe patents are valid. CPi bears the burden of proving invalidity by clear and convincing evidence. This is a higher burden than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. Clear and convincing evidence is evidence that shows it is highly probable that the claims are invalid.

## III.    Trial Procedure

We are about to commence the opening statements in the case. Before we do that, I want to explain to you the procedures that we will be following during the trial and the format of the trial. This trial, like all jury trials, comes in six phases. We already have been through the first phase, which is to select you as jurors. We are now about to begin the second phase, the opening statements. The opening statements of the lawyers are

statements about what each side expects the evidence to show.  The opening statements are not evidence for you to consider in your deliberations.

The evidence comes in the third phase, when the witnesses will take the witness stand and the documents will be offered and admitted into evidence.  In the third phase, WhitServe goes first in calling witnesses to the witness stand.  These witnesses will be questioned by WhitServe's counsel in what is called direct examination.  After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness.  After WhitServe has presented its witnesses, CPi will call its witnesses, who will also be examined and cross-examined.  The parties may present the testimony of a witness by reading from their deposition transcript or playing a videotape of the witness' prior deposition testimony.  A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced somewhat piecemeal, so you as jurors need to keep an open mind as the evidence comes in.  Wait until all the evidence comes in before you make any decision.  In other words, keep an open mind throughout the entire trial.

After we conclude the third phase, the lawyers again have an opportunity to talk to you in what's called "closing argument," which is the fourth phase.  Again, what the lawyers say is not evidence.  The lawyers' closing arguments to you are for the purpose of helping you in making your decisions.

The fifth phase of the trial is when I read you the jury instructions.  In that phase, I will instruct you on the law.  I have already explained a little bit about the law to you.  But later, in this fifth phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial it will be time for you to deliberate.  You can then evaluate the evidence, discuss the evidence among yourselves and make a decision in the case.  You are the judges of the facts.  I will explain to you the rules of law that apply to this case, and I will also explain to you the meaning of the patent claims.  You must follow my explanation of the law and the claims whether you agree with me or not.  Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

*See* American Intellectual Property Law Association, *Model Patent Jury Instructions*, Version 1.2, October 2007.

# POST TRIAL INSTRUCTIONS

**Introduction**

Proposed Jury Instruction No. 1:

**Summary of Patent Issues**

      I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following main issues:

      1.     Whether WhitServe has proved that CPi infringes the asserted claims of the WhitServe patents.  **[WhitServe proposes** "CPi or its customers" as WhitServe asserts that CPi is liable for induced infringement, contributory infringement, and is joint and severally liable for acts of infringement by CPi's customers.]  You will be provided with a verdict form that identifies asserted claims of the WhitServe patents and each of the accused products.

      2.     Whether WhitServe has proved that CPi engaged in willful acts of infringement.

      3.     Whether CPi has proved that WhitServe is prevented from asserting infringement of the '468, '078 and '801 patents under the doctrine of equitable estoppel or laches. [WhitServe objects to this instruction as it is an equitable determination for the Court]

      4.     Whether CPi has proved that the asserted claims of the WhitServe patents are invalid.

      5.     Whether CPi has proved that the asserted claims of the WhitServe patents are unenforceable. [WhitServe objects to this instruction as it is redundant to number 6

below and CPi only alleges that the WhitServe patents are unenforceable due to inequitable conduct].

6.      Whether CPi has proved that WhitServe committed inequitable conduct for each of the WhitServe patents. **[WhitServe objects to this instruction as it is an equitable determination for the Court].**

7.      Whether CPi has proven that WhitServe has disregarded the corporate form and that Mr. Whitmyer is the true owner of the WhitServe patents? [WhitServe objects to this instruction as it is an equitable determination for the Court and does not require factual findings by the jury].

8.      What amount of damages, if any, WhitServe has proved. **[WhitServe Proposes:** The reasonable royalty WhitServe is entitled to.**]**

**Claim Construction**

Proposed Jury Instruction No. 2:

**Claim Construction Generally**

        **[WhitServe objects to this paragraph below to the extent the alleged infringed claims are outdated due to CPi's new products]** Before you decide whether CPi has infringed the claims of the WhitServe patents or whether the WhitServe patents are invalid, you will have to understand the claims of the WhitServe patents.  Patent claims are numbered sentences at the end of the patent.  The patent claims involved here are Claims 1-8, and 24-27 of the '468 patent, beginning at column 6, line 56, which is exhibit ___ in evidence, Claims 1-5, and 9-11 of the '078 patent, beginning at column 8, line 4, of the patent, which is exhibit __ in evidence, Claims 1-3, and 5 of the '801 patent,

beginning at column 11, line 20, of the patent, which is exhibit ___ in evidence, and Claim 10 of the '007 patent, beginning at column 3, line 30 of the patent, which is exhibit ___ in evidence.

**[WhitServe Proposes:** Before you decide whether CPi has infringed the claims of the WhitServe patents or whether the WhitServe patents are invalid, you will have to understand the claims of the WhitServe patents.  Patent claims are numbered sentences at the end of the patent.  The patent claims involved here are Claims 1-12, 17, and 24-27 of the '468 patent, beginning at column 6, line 56, which is exhibit PLT 001 in evidence, Claims 1-2, 4-11 of the '078 patent, beginning at column 8, line 4, of the patent, which is exhibit PLT 005 in evidence, Claims 1-3, and 5 of the '801 patent, beginning at column 11, line 20, of the patent, which is exhibit PLT 003 in evidence, and Claims 1-2, 4-11 of the '007 patent, beginning at column 3, line 30 of the patent, which is exhibit PLT 007 in evidence.**]**

The claims are "word pictures" intended to define, in words, the boundaries of the invention.  Only the claims of the patent can be infringed.  Neither the written description, nor the drawings of a patent can be infringed.  Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.


Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 2.0; 35 U.S.C. § 112; *Phillips v. AWH Corp.*,  415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277 (Fed. Cir. 2000); *Tanabe Seiyaku Co. v. United States Int'l Trade Comm'n*, 109 F.3d 726 (Fed. Cir. 1997); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820 (Fed. Cir. 1989); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 859 F.2d 878 (Fed. Cir. 1988); *Panduit Corp. v. Dennison Mfg. Co.,* 836

F.2d 1329 (Fed. Cir. 1987); *Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538 (Fed. Cir. 1987).

**Claim Construction**

Proposed Jury Instruction No. 3:

**Claim Construction for this Case**

It is my job as judge to provide to you the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.   I will now tell you the meanings of the following words and groups of words from the WhitServe patent claims, which I decided in my Order of August 27, 2008.

[READ STIPULATED CLAIM CONSTRUCTIONS AND COURT'S CLAIM CONSTRUCTIONS]

**"Automatically"**

"'[A]utomatically,' as that term is used in WhitServe's '468 and '078 patent claims, is a process that, once initiated, is performed by a machine without the need for manually performing that process, that is, without the need for human intervention." (Ruling on Mot.'s For Summ. J. at 32).

"[T]he articulation of 'automatic' processes in the claims of the '468 and '078 patents, as a part of the whole invention, does not exclude the possibility of additional, unrecited elements, such as manual steps necessary to initiate an automatic process, manual steps coming between two recited automatic processes, or even manual steps permitted for interrupting an otherwise automatic process." (Id. at 33).

"A machine may still perform the claimed process automatically, even though a human might manually initiate or interrupt the process." (Id. at 34).

"[A]lthough the subparts of the claim must each, where specified, be capable of being performed automatically, the additional, unrecited element of manual steps occurring between the specified automatic processes are not excluded by the claim language." (Id. at 34).

**"Client Data"**

"The court…construes 'client data' to mean 'a complete or partial backup or copy of data records corresponding to a particular client.'" (Id. at 37).  "[T]he prosecution history clarifies that the 'data request' recited in the claim is a 'data backup request…'" (Id. at 38).

WhitServe Authority

The Federal Circuit Bar Association, *Model Patent Jury Instructions*, B.2.3 (2008); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995); CollegeNet, Inc. v. ApplyYourself, Inc., 418 F.3d 1225, 1235 (Fed. Cir. 2005).

**CPI Proposes [WhitServe Accepts CPi's Proposed Instruction Below]**

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

CPI Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions, 2.1; *PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1357 (Fed. Cir. 2004); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc); *SmithKline Diagnostics, Inc. v. Helen Labs., Inc.*, . 859 F.2d 878 (Fed. Cir. 1988).

**Direct Infringement**

Proposed Jury Instruction No. 4:

**Infringement** – **Generally**

Question 1 of the Verdict Form reads as follows:

Has WhitServe proven that it is more likely than not that an asserted claim
of the WhitServe patents is infringed by a CPi product?  Answer the
question by checking either yes or no.  A "yes" answer means CPi
infringes the asserted claim.  A "no" answer means CPi does not infringe
the asserted claim.

I will now instruct you as to the rules you must follow when deciding whether

WhitServe has proven that CPi infringed any of the asserted claims of the WhitServe

patents.

Patent law gives the owner of a valid patent the right to exclude others from

importing, making, using, offering to sell, or selling a patented invention within the

United States during the term of the patent.  Any person or business entity that has

engaged in any of those acts without the patent owner's permission infringes the patent.

[**CPi proposes:**  Here, WhitServe alleges that CPi's EARS, TERMS,  and CPi Online

products infringe the asserted WhitServe patent claims.]

[**WhitServe proposes:**  Here, WhitServe alleges that CPi's Desktop EARS, TERMS, CPi

Online, Hosted EARS and Hosted PMS products infringe the asserted WhitServe patent

claims.  In determining infringement TERMS and Desktop EARS can be considered

together since the only difference is that Desktop EARS generates reminders relating to

patent annuity deadlines and TERMS generates reminders relating to trademark renewal

deadlines.]

You have heard evidence about both WhitServe's NetDocket product and CPi's

accused products.  However, in deciding the issue of infringement you may not compare

CPi's accused products to NetDocket.  Rather, you must compare each of CPi's accused

products to the claims of the WhitServe patents when making your decision regarding infringement.

A patent may be infringed directly or indirectly.  **[WhitServe proposes inserting:** WhitServe asserts that CPi and its customers directly infringe the WhitServe patents.] Direct infringement results if CPi's accused products are covered by at least one claim of the patent.  **[WhitServe proposes inserting:** Whether a direct infringer has knowledge of a patent or intends to infringe a patent is immaterial. (AIPLA's Model Patent Jury Instructions, Post-Trial Instructions, 3.1; 35 U.S.C. 271(a); *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 478, 181 USPQ 673, 677 (1974))]. Indirect infringement results if CPi induces another to infringe a patent or contributes to the infringement of a patent by another.

Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions, 3.0;35 U.S.C. § 271; *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Andco Envtl. Processes, Inc. v. Niagara Envtl. Assocs., Inc.*, 206 U.S.P.Q. 656, 662 (W.D.N.Y. 1980).

**Infringement**

Proposed Jury Instruction No. 5:

**Literal Infringement**

**CPi proposes:**

To determine literal infringement, you must compare each of the accused CPi products with each claim that WhitServe asserts is infringed, using my instructions as to the meaning of the patent claims.

A WhitServe patent claim directed to an apparatus or a device is literally infringed only if one of CPi's products include each and every element in the claim. Likewise, a WhitServe patent claim directed to a method is literally infringed only if one of CPi's products performs each and every step recited in the claim. If CPi's products do not contain one or more elements, or does not perform one or more of the steps, recited in a claim, CPi does not literally infringe that claim. You must determine literal infringement with respect to each patent claim and with respect to each accused product individually.

The accused products should be compared to the invention described in each patent claim it is alleged to infringe, not to WhitServe's preferred embodiment of the claimed invention.

Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 3.2; *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); *Wenger Mfg. Inc. v. Coating Mach. Sys., Inc.,* 239 F.3d 1225, 1231 (Fed. Cir. 2001); *Gen. Mills, inc. v. Hunt-Wesson, Inc.,* 103 F.3d 978, 981 (Fed. Cir. 1997); *Martin v. Barber,* 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstart Corp. v. Environtech Corp.,* 730 F.2d 1476, 1483 (Fed. Cir. 1984).

**WhitServe proposes:**

To determine literal infringement, you must compare each of the accused CPi products, or computer systems installed with CPi's products, with each claim that WhitServe asserts is infringed, using my instructions as to the meaning of the patent claims, which includes the proper construction for the terms "automatically" and "client data.".

A WhitServe patent claim directed to an apparatus or a device is literally infringed only if one of CPi's products, or computer systems installed with CPi's products, include each and every element in the claim.  Likewise, a WhitServe patent claim directed to a method is literally infringed only if one of CPi's products, or computer systems installed with CPi's products, performs each and every step recited in the claim.  If CPi's products, or computer systems installed with CPi's products, do not contain one or more elements, or does not perform one or more of the steps, recited in a claim, CPi does not literally infringe that claim.  You must determine literal infringement with respect to each patent claim and with respect to each accused product individually.

The accused products, or computer systems installed with the products, should be compared to the invention described in each patent claim it is alleged to infringe, not to WhitServe's preferred embodiment of the claimed invention.

Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 3.2; *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); *Wenger Mfg. Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1231 (Fed. Cir. 2001); *Gen. Mills, inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997); *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstart Corp. v. Environtech Corp.*, 730 F.2d 1476, 1483 (Fed. Cir. 1984).

**Direct Infringement**

Proposed Jury Instruction No. 6:

**Infringement Under the Doctrine of Equivalents**

[**CPi proposes:**  If you decide that CPi's EARS or TERMS products do not literally infringe claims 5-8 of the '468 patent or claims 4-5 of the '078 patent, you must then decide whether that product infringes the asserted claim under what is called the "doctrine of equivalents."]

[**WhitServe proposes**:  If you decide that an accused CPi product does not literally infringe an asserted patent claim, you must then decide whether that product infringes the asserted claim under what is called the "doctrine of equivalents."]

Under the doctrine of equivalents, an accused product can infringe an asserted patent claim if it includes parts that are identical or equivalent to the requirements of the claim. If the product is missing an identical or equivalent part to even one part of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product has an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement.  One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in

substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement. The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents. The same element of the accused product may satisfy more than one element of a claim.

WhitServe has only asserted infringement under the doctrine of equivalents with regard to claims 5-8 of the '468 patent or claims 4-5 of the '078 patent, as applied to the CPi EARS and TERMS products. Therefore, you should not consider the doctrine of equivalents with regard to any of the other patent claims or CPi's PMS and CPi On Line products. **[WhitServe objects to this paragraph as WhitServe believes that each claim should be considered under the Doctrine of Equivalents and this instruction fails to acknowledge that Hosted EARS and Hosted PMS are products that are relevant to the determination of infringement under the doctrine of equivalence.]**

Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 3.13; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Johnson & Johnson Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

**Infringement**

Proposed Jury Instruction No. 7:

**Infringement of Open Ended or "Comprising" Claims**

The preamble of many of the asserted claims uses the term comprising.  For example, claim 1 of the '468 patent uses the phrase "a device for automatically delivering professional services to a client comprising: . . ."  "When a patent claim uses the word 'comprising' as its transitional phrase, the use creates a presumption that the body of the claim is open, that the recited elements are only a part of the device , that the claim does not exclude additional, unrecited elements." (Ruling on Mot.'s For Summ. J. at 33).

If you find that one of CPi's products include all of the elements in claim 1 of the '468 patent, the fact that the product might include additional components would not avoid infringement of a claim that uses "comprising" language.

*Authority:*

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 3.7; *Invitrogen Corp. v. Biocrest Mfg. LP*, 327 F.3d 1364, 1368 (Fed. Cir. 2003); *AFG Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1244 (Fed. Cir. 2001); Crystal Semiconductor Corp. v. Tritech Microelectronics Inter'l, Inc., Inc., 246 F.3d 1336, 1348 (Fed. Cir. 2001).

**Infringement**

Proposed Jury Instruction No. 8:

**Infringement of Dependent Claims**

There are two different types of claims in the WhitServe patents.  One type of claim is called an independent claim.  The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent.  An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent.  A dependent claim incorporates all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

For example, claim 1 of the '468 patent is an independent claim and recites several elements.  Claim 2 of the '468 patent is a dependent claim that refers to claim 1 of the '468 patent and includes an additional element or limitation.

For example claim 1 of the '468 patent claims a device for automatically delivering professional services to a client.  Independent claim 1 recites:

1.     A device for automatically delivering professional services to a client comprising:

(1) a computer;

(2) a database containing a plurality of client reminders, each of the client reminders comprising a date field having a value attributed thereto;

(3) software executing on said computer for automatically querying said database by the values attributed to each client reminder date field to retrieve a client reminder;

(4) software executing on said computer for automatically generating a client response form based on the retrieved client reminder;

(5) a communication link between said computer and the Internet;

(6) software executing on said computer for automatically transmitting the client response form to the client through said communication link; and,

(7) software executing on said computer for automatically receiving a reply to the response form from the client through said communication link.

Dependent Claim 2 of the '468 patent recites:

2.     The device of claim 1 further comprising software executing on said computer for automatically generating a response based on the reply, and for automatically transmitting the response to a third party.

Dependent claim 2 requires each of the elements of independent claim 1, as well as the additional elements identified in dependent claim 2 itself.

To establish literal infringement of the dependent claims, WhitServe must show that it is more likely than not that CPi's products include each and every element of the dependent claims.

If you find that the independent claim from which the dependent claim depends is not literally infringed, then you cannot find that the dependent claims are literally infringed.

Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 3.6; *Wolverine World Wide v. Nike Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Wilson Sporting Goods v. David Geoffrey & Assocs.,* 904 F.2d 677 (Fed. Cir. 1990); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.,* 870 F.2d 1546, 1553 nn.9&10 (Fed. Cir. 1989); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,* 758 F.2d 613, 626 (Fed. Cir. 1985).

**Infringement**

Proposed Jury Instruction No. 10:

**Inducing Patent Infringement**

WhitServe also asserts that CPi has actively induced another to infringe the patent, a form of indirect infringement.  To show induced infringement of a particular patent, WhitServe must prove that it is more likely than not that someone has directly infringed that patent and that CPi has actively and knowingly aided and abetted that direct infringement.  WhitServe must show that CPi actually intended to cause the acts that constitute direct infringement, that CPi knew of the patent and that CPi knew or should have known that its actions would lead to actual infringement.  Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use.  It is not necessary to show that CPi has directly infringed as long as you find that someone has directly infringed.   If there is no direct infringement by anyone, CPi has not induced infringement.

Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 3.3; 35 U.S.C. § 271(b); *DSU Medical Corp. v. JMS Co.,* 471 F.3d 1293, 1304 (Fed. Cir. 2006) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005); *Metabolite Labs., Inc. v. Lab. Corp. of Am.*, 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1312 (Fed. Cir. 1998);  *Manville Sales Corp.  v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990); *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 674 (Fed. Cir. 1990);*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468-69 (Fed. Cir. 1990); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp*., 859 F.2d 878, 889 (Fed. Cir. 1988)

**Infringement**

Proposed Jury Instruction No. 11:

**Contributory Infringement**

WhitServe also asserts that CPi has contributed to another's infringement, another form of indirect infringement. To show contributory infringement, WhitServe has the burden to prove that it is more likely than not that there was contributory infringement.

It is not necessary to show that CPi has directly infringed as long as you find that someone has directly infringed. If there is no direct infringement by anyone, CPi has not contributed to the infringement of the patent. If you find someone has directly infringed the WhitServe patents, then contributory infringement exists if:

(1) CPi sold, offered for sale, or imported;

(2) a material component of the patented invention that is not a staple article of commerce capable of substantial noninfringing use;

(3) with knowledge that the component was especially made or adapted for use in an infringing product or method.

A "staple article of commerce capable of substantial noninfringing use" is something that has uses other than as a part or component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 3.4; 35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et* al., 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001);*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986); 4 Donald S. Chisum, *Patents* § 17.03[3], n.6 (2002).

**Infringement**

Proposed Jury Instruction No. 12:

**Willful Infringement**

**WhitServe Proposes:**

In this case, WhitServe argues that CPi willfully infringed the WhitServe patents. If you find, on the basis of the evidence and the law as I have explained it, that CPi has infringed at least one of the asserted claims (either directly or indirectly), then you must decide whether this infringement was willful. Question 2 of the Verdict Form reads as follows:

> Has WhitServe proven that CPi has willfully infringed the WhitServe patents?  Answer the question by checking either yes or no.  A "yes" answer means CPi willfully infringed the patent.  A "no" answer means CPi did not willfully infringe the patent.

In order for CPi to be liable for willful infringement, you must determine whether CPi acted with reckless disregard of the WhitServe patents.  You must consider whether a reasonable person in the position of CPi, after learning of the WhitServe patents, could have reasonably believed that it did not infringe or reasonably believed the patent was invalid or unenforceable.  If a reasonable person in the position of CPi could not have held such belief, then you need to determine whether CPi actually knew, or it was so obvious that CPi should have known, that its actions constituted infringement of a valid and enforceable patent.  When making this determination, you should consider all of the facts surrounding the alleged infringement, including:

(1) Whether it is unreasonable to hold a belief of non-infringement based on a construction of a claim term that would render the invention inoperable?

(2) Whether it is unreasonable for CPi to come to the conclusion that it does not infringe the WhitServe patents based on a lay opinion regarding the meaning of the claims of the WhitServe patents without seeking or relying on the legal advice of counsel?

(3) Whether it is unreasonable for CPi to ignore contrary opinions regarding the validity of the WhitServe patents in view of CPi's competitors purchasing licenses to practice the WhitServe patents?  For Example, both MDC and CPA obtained licenses for the WhitServe patent.

(4) Whether it is unreasonable for CPi to conclude that it does not infringe when the ordinary and customary meaning of "automatically" performing a function is "once initiated, some portion of a function is performed by a machine, without the need for manually performing the function."   In determining whether CPi was unreasonable you can consider the Court's holding that the term "automatically" means "a process that, once initiated, is performed by a machine without the need for manually performing that process, that is, without the need for human intervention" and that   "the articulation of 'automatic' processes in the claims of the '468 and '078 patents, as a part of the whole invention, does not exclude the possibility of additional, unrecited elements, such as manual steps necessary to initiate an automatic process, manual steps coming between two recited automatic processes, or even manual steps permitted for interrupting an otherwise automatic process." (Ruling on Mot.'s For Summ. J. at 32-33).

(5) Whether CPi intentionally copied the claimed invention or a product covered by the WhitServe patents.

(6) Whether or not CPi possessed a reasonable legal basis to believe that it had a substantial defense to infringement and reasonably believed that the defense would be successful if litigated.

(7) Whether CPi relied on or reasonably could rely upon any communication from WhitServe regarding whether Desktop EARS infringed the WhitServe patents.

(8) Whether or not CPi made a good faith effort to avoid infringing the patent, for example if CPi took remedial action upon learning of the patent by ceasing infringing activity or attempting to design around the patent.

(9) Whether or not CPi tried to conceal its infringement by not being forthcoming about or misrepresenting the characteristics of its products, concealing the existence of products during the course of this litigation, or by purposefully taking affirmative actions to prevent WhitServe from obtaining information about how CPi's  products worked.


WhitServe's Authority:
The Federal Circuit Bar Association, *Model Patent Jury Instructions*, B.3.8 (2010); *35 U.S.C. § 284; In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. Aug. 20, 2007); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); Northern District of California, *Model Patent Jury Instructions*, at 22-23 (Oct. 9, 2007); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992); *Minks v. Polaris Industries Inc.,* 2007 WL 788418 (M.D. Fla. 2007), subsequent determination, 2007 WL 1725211 (M.D. Fla. 2007), *aff'd*, 546 F.3d 1364, 1380–81 89 (Fed. Cir. 2008).

**CPI Proposes:**

If you find by a preponderance of the evidence that CPi infringed the WhitServe patents, either literally or under the doctrine of equivalents, then you must further determine if this infringement was willful.  Willfulness must be proven by clear and convincing evidence showing that:

1.  CPi had actual knowledge of the WhitServe patents,

2.  A reasonable person, with knowledge of the WhitServe patents, would have concluded that (a) CPi's actions were highly likely to infringe the WhitServe patents, and (b) the WhitServe patents were highly likely to be valid, and

3.  CPi acted even though CPi knew, or it was so obvious that CPi should have known, that CPi's actions were highly likely to infringe a valid patent.

In making the determination as to willfulness, you must consider the totality of the circumstances.  The totality of circumstances comprises a number of factors, which include, but are not limited to whether CPi intentionally copied the claimed invention or a product covered by the WhitServe patents, whether CPi presented a substantial defense to infringement, including the defense that the patent is invalid or unenforceable, and whether any actions by WhitServe would lead CPi to believe that the WhitServe patents were not infringed, invalid or unenforceable.

CPI's Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 13; *In re Seagate Technology, LLC*, 497 F.3d 360 (Fed. Cir. 2007) (en banc); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004)(en banc).

**Invalidity**

Proposed Jury Instruction No. 13:

**Summary of Invalidity Defense**

CPi contends that the asserted claims of the WhitServe patents are invalid.  CPi has the burden of proving by clear and convincing evidence that each claim is invalid.

**[WhitServe proposes including:** This is a higher burden than what is required to show infringement, and requires CPi to show that is highly probable that the WhitServe patents are anticipated or obvious by references predating the invention of the WhitServe patents, otherwise known as "prior art."]**

Claims of an issued patent may be found to be invalid if the defendant meets its burden of proof.  Thus, you must determine whether each of WhitServe's patent claims is invalid.

CPi contends that all of the asserted patent claims are invalid for the following reasons:

CPi contends the asserted claims of the '468, '078, and '801 patents are invalid as either anticipated or obvious to those skilled in the art at the time of the invention, in view of  both prior art not disclosed to the patent office, including the Hogan, Abbruzzese, and Ledwidth patents and EDSI Perfect Law Docket 2.0 manual, and the prior art of record in one or more of the '468, '078, and '801 patents, including but not limited to the Griebenow, Linstead and Tondevold patents.  CPi further contends that

claim 10 of the '007 patent is rendered obvious, if not anticipated, by the Schrader patent, by admitted prior art Fig. 2 of the '007 patent and the prior art of record. **[WhitServe objects to this paragraph as it presents allegations about invalidity that CPi has not adequately disclosed in its Interrogatory Responses of its Expert Reports. Furthermore, these contentions are subject to a Motion in Limine Dkt. 316.]**

I will now instruct you in more detail on what CPi must establish in order for the claims of a patent to be invalid.


Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 4.

**Invalidity**

<u>Proposed Jury Instruction No. 14:</u>

**Prior Art Defined**

Prior art includes any of the following items received into evidence during trial:

1.   Patents or printed publications by anyone that issued or were published more than one year before the effective filing date of the WhitServe patents;

2.   Patents, published patent applications, or printed publications by a person other than the inventor of the WhitServe patents that issued or published before the patented invention of the WhitServe patents was conceived;

3.   Patents filed by a person other than the inventor of the WhitServe patent before the date of invention of the WhitServe patents regardless of when the patent issued;

4.   Any product or method that was publicly known or used in the United States by a person other than the inventor of the WhitServe patents before the patented invention was made; and

5.   Any product or method that was in public use or on sale in the United States more than one year before [effective filing date].

In this case, CPi contends that the following items are prior art:

1.   U.S. Patent 5,699,528 ("Hogan").

2.   U.S. Patent 5,557,515 ("Abbruzzese").

3.   U.S. Patent 5,850,520 ("Griebenow").

4.   U.S. Patent 5,903,881 ("Schrader").

5.   U.S. Patent No. 5,410,646 ("Tondevold"). **[WhitServe objects to this paragraph as it presents allegations about invalidity that CPi has not adequately disclosed in its Interrogatory Responses of its Expert Reports.  Furthermore, these contentions are subject to a Motion in Limine Dkt. 316.]**

6.   U.S. Patent No. 5,548,753 ("Linstead") **[WhitServe objects to this paragraph as it presents allegations about invalidity that CPi has not adequately disclosed in its Interrogatory Responses of its Expert Reports.  Furthermore, these contentions are subject to a Motion in Limine Dkt. 316.]**

7.   GB 2,156,112 ("Ledwith").

8.   The admitted prior art as reflected in Figure 2 of the '007 patent.

9.   The 1994 PerfectLaw Docket 2.0 Training Manual **[WhitServe objects to this paragraph as it presents allegations about invalidity that CPi has not adequately disclosed in its Interrogatory Responses of its Expert Reports.  Furthermore, these contentions are subject to a Motion in Limine Dkt. 316.]**

10. The 1994 PerfectLaw Docket 2.0 System. **[WhitServe objects to this paragraph as it presents allegations about invalidity that CPi has not adequately disclosed in its Interrogatory Responses of its Expert Reports.  Furthermore, these contentions are subject to a Motion in Limine Dkt. 316.]**

Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 5; 35 U.S.C. § 102.

**Date of Invention**

**WhitServe Proposes**

In this case, there is a dispute between the parties regarding when the patentee conceived the invention of the WhitServe patents and, therefore, whether two of the mentioned items, the Hogan and Griebenow references, constitute prior art to certain of those patents.  WhitServe contends that Mr. Whitmyer conceived of the invention of the '468, '801 and '078 patents before the filing date of the Hogan and Griebenow references.  WhitServe has the burden to offer evidence showing that Mr. Whitmyer invented the subject matter of these patents before Hogan or Griebenow were filed with the PTO.  If WhitServe satisfies this burden, CPi bears the burden of showing by clear and convincing evidence that Mr. Whitmyer did not conceive of the invention of the '468, '801 and '078 patents before the filing date of the Hogan and Griebenow references.

There are two basic concepts that underlie your decision on this question.

First, I will address the concept of "conception." Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice. Conception of an invention is complete when the idea is so clearly defined in then inventor's mind that a person of ordinary skill in the field of the technology would be able to reduce the invention to practice without extensive research or experimentation. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

Second, a claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose. An invention may be reduced to practice even if the inventor has not made or tested a prototype of the invention. The invention may be reduced to practice by being fully described in a filed patent application.

In order for an invention to have been made, it must have been conceived and reduced to practice.  In this case, you must determine a date of conception and reduction to practice for the claimed invention.  In addition to conception and reduction to practice, the inventor must exercise diligence in moving his invention toward the filing of a patent application. A reference does not pre-date the date of invention when the inventor conceived of the invention before the date of the reference and exercised reasonable diligence to reduce the invention to practice from just before the reference date up to when the inventor filed a patent application with the PTO.  An inventor uses reasonable diligence even though progress on reducing the invention to practice is interrupted by the everyday problems and obligations of the inventor, such as employment or work obligations.  Further, an inventor can be reasonably diligent when the delay in reducing an invention to practice is due to a lack of funds or even vacation.  If you do not find that the invention was conceived and reduced to practice before the filing date of the application, or if you find that it was but that the inventor failed to file the patent application diligently, then you must find that the date of invention is the date that the application for patent was filed.  You must determine whether the patentee conceived of the invention before the date of the reference and exercised reasonable diligence to

reduce the invention to practice from just before the reference date up to when the inventor filed a patent application with the PTO.

As a result, if you conclude that the invention of the '468, '801 and '078 patents were conceived by Mr. Whitmyer before U.S. Patent No. 5,699,528 to Hogan was filed with the PTO and Mr. Whitmyer was reasonably diligent in pursuing the invention before filing a patent application, then this reference is not prior art and may not be considered in assessing the validity of those three patents.

Also, if you conclude that the invention of the '468, '801 and '078 patents was conceived by Mr. Whitmyer before U.S. Patent No. 5,850,520 to Griebenow et al. was filed with the PTO and Mr. Whitmyer was reasonably diligent in pursuing the invention before filing a patent application, then this reference is not prior art and may not be considered in assessing the validity of those three patents.


WhitServe's Authority:

35 U.S.C. § 102; *Loral Fairchild Corp. v. Matsushita Electrical Industrial Co.*, 266 F.3d 1358 (Fed. Cir. 2001); *Mahurkar v. Bard*, 79 F.3d 1572, 1577-78 (Fed. Cir. 1996); *Allied-Signal Inc. v. Allegheny Ludlum Corp.*, 1993 WL 315339, *6 (D. Conn. 1993); *Gould v. Schawlow*, 363 F.2d 908, 919 (CCPA 1966); Reed v. Tornqvist, 436 F.2d 501, 503- 05 (CCPA 1971).


**CPI Proposes**

In this case, there is a dispute between the parties regarding when the patentee made the invention of the WhitServe patents and, therefore, whether two of the mentioned items, the Hogan and Griebenow references, constitute prior art to certain of those patents.  You must decide the date the invention of the WhitServe patents was made

by a preponderance of the evidence. There are two basic concepts that underlie your decision on this question.

First, I will address the concept of "conception." Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice. Conception of an invention is complete when the idea is so clearly defined in then inventor's mind that a person of ordinary skill in the field of the technology would be able to reduce the invention to practice without extensive research or experimentation. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

Second, a claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose. An invention may be reduced to practice even if the inventor has not made or tested a prototype of the invention. The invention may be reduced to practice by being fully described in a filed patent application.

In order for an invention to have been made, it must have been conceived and reduced to practice.  In this case, you must determine a date of conception and reduction to practice for the claimed invention in order to decide whether or not CPi has shown that a patent claim was not new.  In addition to conception and reduction to practice, the inventor must exercise diligence in moving his invention toward the filing of a patent application. If you do not find that the invention was conceived and reduced to practice before the filing date of the application, or if you find that it was but that the inventor

failed to file the patent application diligently, then you must find that the date of invention is the date that the application for patent was filed.

As a result, if you conclude that the invention of the '468 and '078 patents were conceived by Mr. Whitmyer before U.S. Patent No. 5,699,528 to Hogan was filed with the PTO and Mr. Whitmyer was reasonably diligent in pursuing the invention before filing a patent application, then this reference is not prior art and may not be considered in assessing the validity of those two patents.  Regardless of your decision regarding the '468 and '078 patents, the Hogan reference is prior art to the '801 patent and should be considered in evaluating the validity of that patent.

Also, if you conclude that the invention of the '468, '801 and '078 patents was conceived by Mr. Whitmyer before U.S. Patent No. 5,850,520 to Griebenow et al. was filed with the PTO and Mr. Whitmyer was reasonably diligent in pursuing the invention before filing a patent application, then this reference is not prior art and may not be considered in assessing the validity of those three patents.


CPI's Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 6.1; 35 U.S.C. § 102; *Loral Fairchild Corp. v. Matsushita Electrical Industrial Co.*, 266 F.3d 1358 (Fed. Cir. 2001); *Mahurkar v. Bard*, 79 F.3d 1572 (Fed. Cir. 1996); *Allied-Signal Inc. v. Allegheny Ludlum Corp.*, 1993 WL 315339, *6 (D. Conn. 1993); *Gould v. Schawlow*, 363 F.2d 908, 919 (CCPA 1966); Reed v. Tornqvist, 436 F.2d 501, 503- 05 (CCPA 1971).

**Invalidity**

Proposed Jury Instruction No. 15:

**Anticipation**

**WhitServe Proposes**

In order to prove that the WhitServe patents are invalid due to anticipation, CPi must present clear and convincing evidence showing that each and every element in an asserted claim is present in a single prior art reference.  The way in which the elements are arranged or combined in the claim must itself be disclosed in a single embodiment, either expressly or inherently, in an anticipatory reference.  Unless a reference discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way in a single embodiment as recited in the claim, it cannot be said to prove prior invention of the thing claimed and, thus, cannot anticipate under 35 U.S.C. § 102.  Anticipation cannot be found by selecting elements from two separate embodiments in the same piece of prior art.  You may not combine two or more items of prior art to prove anticipation.  In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular patent.  The description in a reference does not have to be in the same words as the claim but all the requirements of the claim must be there, either stated expressly or necessarily implied or inherent in the level of ordinary skill in the art in the technology of the invention at the time of the invention, so that someone of ordinary skill in the field of technology of the patent looking at that a single

reference would be able to make and use the claimed invention without undue experimentation.

In this case, CPi contends that certain claims of the WhitServe patents are anticipated.

First, CPi contends that the invention of claims 1-8, 24-27 of the '468 patent, claims 1-5 and 9-11 of the '078 patent, and claim 1 of the '801 patent are described in Hogan, U.S. Patent No. 5,699,528 and Abbruzzese,U.S. Patent No. 5,557,515.

Second, CPi contends that the invention of claims 1, 5 and 24 of the '468 patent, claims 1, 4 and 9 of the '078 patent, and claim 1 of the '801 patent are described in Griebenow, U.S. Patent 5,850,520.

Third, CPi contends that the invention of claim 10 of the '007 patent is described in Schrader, U.S. Patent 5,903,881.

Fourth, CPi contends that the invention of claim 10 of the '007 patent is described in admitted prior art Figure 2 of the '007 patent.

To establish that the a claim is invalid for any of the above reasons, CPi must establish by clear and convincing evidence, that each and every element of the claim is disclosed in a single reference in a way such that someone of ordinary skill in the art looking at that single reference would be able make and use the claimed invention without undue experimentation.  That is, based on the evidence presented to you in this case, you must be left with a clear conviction that the claim is not new.

Authority:

The Federal Circuit Bar Association, *Model Patent Jury Instructions*, B.4.3a1 (2008); 35 U.S.C. § 102(a), (b), (c), (d), (e), (t), and (g); Flex-Rest, LLC v. Steelcase, Inc., 455 F.3d 1351 (Fed. Cir. 2006); In re Klopfenstein, 380 F.3d 1345 (Fed. Cir. 2004); Apotex U.S.A., Inc. v. Merck & Co., 254 F.3d 1031, 1035 (Fed. Cir. 2001); Mycogen Plant Science, Inc. v. Monsanto Co., 243 F.3d 1316, 1330 (Fed. Cir. 2001); Ecolochem, Inc. v. S. Cal. Edison Co., 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); Singh v. Brake, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *In re Robertson*, 169 F.3d 743 (Fed. Cir. 1999); Pannu v. Iolab Corp., 155 F.3d 1344, 1349 (Fed. Cir. 1998); Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); Lamb-Weston, Inc. v. McCain Foods, Ltd., 78 F.3d 540, 545 (Fed. Cir. 1996); In re Bartfeld, 925 F.2d 1450 (Fed. Cir. 1985); Ralston Purina Co. v. Far-MarCo, Inc., 772 F.2d 1570, 1574 (Fed. Cir. 1985); American Stock Exch., LLC v. Mopies, 250 F. Supp. 2d 323 (S.D.N.Y. 2003); In re Wyer, 655 F.2d 221, 226 (C.C.P.A. 1981). Pfaff v. Wells Elec. Inc., 525 U.S. 55 (1998); Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1346 (Fed. Cir. 2000); Abbot Labs. v. Geneva Pharms., Inc., 182 F.3d 1315, 1318 (Fed. Cir. 1999); Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354 (Fed. Cir. 1999); J.A. LaPorte, Inc. v. Norfolk Dredging Co., 787 F.2d 1577, 1581 (Fed. Cir. 1986); In re Hall, 781 F.2d 897, 898-99 (Fed. Cir. 1986); D.L. Auld Co. v. Chroma Graphics Corp., 714 F.2d 1144, 1150 (Fed. Cir. 1983); Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1371 (Fed.Cir.2008).

**CPI Proposes**

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated by the prior art." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. To prove anticipation, CPi must show that the claimed invention is not new.

In this case, CPi contends that certain claims of the WhitServe patents are anticipated.

First, CPi contends that the invention of claims 1-8, 24-27 of the '468 patent, claims 1-5 and 9-11 of the '078 patent, and claim 1 of the '801 patent are described in Hogan, U.S. Patent No. 5,699,528 and Abbruzzese,U.S. Patent No. 5,557,515.

Second, CPi contends that the invention of claims 1, 5 and 24 of the '468 patent, claims 1, 4 and 9 of the '078 patent, and claim 1 of the '801 patent are described in Griebenow, U.S. Patent 5,850,520.

Third, CPi contends that the invention of claim 10 of the '007 patent is described in Schrader, U.S. Patent 5,903,881.

Fourth, CPi contends that the invention of claim 10 of the '007 patent is described in admitted prior art Figure 2 of the '007 patent.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art. You may not combine two or more items of prior art to prove anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art reference, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular patent.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior patent,

publication and invention, but also what inherently featured in or resulted from a natural result of its practice. This is called "inherency." A party claiming inherency must prove it by clear and convincing evidence. To establish inherency, the evidence must make clear that prior art either necessarily featured or resulted in the missing descriptive matter and that it would be so recognized by persons of ordinary skill in the art. Inherent anticipation, however, does not require that a person of ordinary skill in the art at the time the patent application was filed would have recognized the inherent disclosure. Thus, the prior use of the patented invention that was accidental, or unrecognized and unappreciated can still be an invalidating anticipation.

<u>Authority</u>:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 6.0; *In re Omeprazole Patent Litigation*, 483 F.3d 1364 (Fed. Cir. 2007); *Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 471 F.3d 1363 (Fed. Cir. 2006); *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368 (Fed. Cir. 2005); *Toro Co. v. Deere & Co.*, 355 F.3d 1313 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373 (Fed. Cir. 2003); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316 (Fed. Cir. 2001); *In re Robertson*, 169 F.3d 743 (Fed. Cir. 1999); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342 (Fed. Cir. 1999); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550 (Fed. Cir. 1995); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559 (Fed. Cir. 1992); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 953 F.2d 1360 (Fed. Cir. 1991); *Cont'l Can Co. USA v. Monsanto Co.,* 948 F.2d 1264 (Fed. Cir. 1991); *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560 (Fed. Cir. 1988); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461 (Fed. Cir. 1988); *Verdegaal Bros., Inc. v. Union Oil Co.,* 814 F.2d 628 (Fed. Cir. 1987); *Carella v. Starlight Archery & Pro Line Co.,* 804 F.2d 135, *modified on reh'g,* 804 F.2d 135 (Fed. Cir. 1986); *Tyler Refrigeration v. Kysor Indus. Corp.,* 777 F.2d 687 (Fed. Cir. 1985); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,* 758 F.2d 613 (Fed. Cir. 1985); *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.,* 730 F.2d 1452 (Fed. Cir. 1984); *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542 (Fed Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540 (Fed. Cir. 1983); *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n,* 718 F.2d 365 (Fed. Cir. 1983); *In re Marshall,* 578 F.2d 301 (C.C.P.A. 1978); *In re Felton,* 484 F.2d 495 (C.C.P.A. 1973); *HK Regar & Sons v. Scott & Williams, Inc.,* 63 F.2d 229 (2d Cir. 1933); *Hughes Aircraft Co. v. United States,* 8 U.S.P.Q.2d 1580 (Ct. Cl. 1988).

**Invalidity**

<u>Proposed Jury Instruction No. 16:</u>

**<u>Obviousness</u>**

CPi contends that all of the asserted claims of the WhitServe patents are invalid because the claimed inventions were "obvious."  In particular, CPi contends the asserted claims of the '468, '078, and '801 patents are invalid as obvious to those skilled in the art at the time of the invention, in view of both prior art not disclosed to the patent office, including the Hogan, Abbruzzese, and Ledwidth patents and EDSI Perfect Law Docket 2.0 manual, and the prior art of record in one or more of the '468, '078, and '801 patents, including but not limited to the Griebenow, Linstead and Tondevold patents.  CPi further contends that claim 10 of the '007 patent is rendered obvious, by the Schrader patent, by admitted prior art Fig. 2 of the '007 patent and the prior art of record. **[WhitServe objects to this paragraph as it presents allegations about invalidity that CPi has not adequately disclosed in its Interrogatory Responses of its Expert Reports.  Furthermore, these contentions are subject to a Motion in Limine Dkt. 316.] [<u>WhitServe proposes including:</u>** In order to prove that the WhitServe patents are invalid due to obviousness, CPi must present clear and convincing evidence showing that the differences between each claim and the prior art must be such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art. (The Federal Circuit Bar Association, *Model Patent Jury Instructions*, B.4.3b (2008))]

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made. Unlike anticipation which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

The following factors must be evaluated to determine whether CPi has established that the claimed inventions are obvious:

1. the scope and content of the prior art relied upon by CPi;

2. the difference or differences, if any, between each claim of the WhitServe patents and the prior art;

3. the level of ordinary skill in the art at the time the invention of the WhitServe Patents was made; and

4. additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

**[WhitServe proposes including**: It is necessary to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new invention does.  This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.  Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness.

Furthermore, in addition to the presumption of validity issued patents are entitled and the burden of showing, by clear and convincing evidence, the invalidity of the claims, this burden is especially difficult when the prior art being considered was before the patent examiner during prosecution of the application.  *Hewlett-Packard Co. v. Bausch & Lomb Inc.,* 909 F.2d 1464, 1467 (Fed. Cir. 1990); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,  370 F.3d 1354, 1368 (Fed. Cir. 2004)**]**

When considering the issue of obviousness it is improper to use hindsight bias, as each claim must be obvious as of the date of the invention. You cannot look at the invention knowing

what persons of ordinary skill in the art know today.  Rather, you must place yourself in the

shoes of a person having ordinary skill in the field of technology of the patent at the time the

inventions were made.

CPi bears the burden of proving obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

Authority:

The Federal Circuit Bar Association, *Model Patent Jury Instructions*, B.4.3b (2008); The
National Jury Instruction Project, *Model Patent Jury Instructions*, 5.9 (2009); AIPLA's Model
Patent Jury Instructions, Post-Trial Instructions 6.9; *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct.
1727, 1740-41 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18, 86 S.Ct. 684, 694 (1966);
*Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Ruiz v.
A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkies Lures, Inc. v. Gene Larew
Tackle, Inc.*, 119 F.3d 953, 955 (Fed. Cir. 1997); *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714,
716 (Fed. Cir. 1991); *Nutrition 21 v. U.S.,* 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *Newell Cos. v.
Kenney Mfg. Co.,* 864 F.2d 757, 764 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park
Rubber Co.,* 749 F.2d 707, 718-19 (Fed. Cir. 1984); *Orthopedic Equip. Co. v. All Orthopedic
Appliances, Inc.,* 707 F.2d 1376, 1382-83 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.,*
713 F.2d 1530, 1538-40 (Fed. Cir. 1983).

**Scope and Content of the Prior Art**

**WhitServe Proposes**

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.  You must also decide what those references would have disclosed or taught to one having ordinary skill in the field of technology of the patent at the time the inventions were conceived.  In order for a reference to be relevant for you to consider in deciding whether or not the claimed inventions would have been obvious, the reference must be within the field of the inventor's endeavor, or if it is from another field of endeavor, the reference must be reasonably related to the particular problems or issues the inventor faced or addressed when making the inventions described in the WhitServe patents.  It is for you to decide what the problems or issues were that the inventor faced at the time the inventions claimed in the WhitServe patents.

**WhitServe's Authority:**

The Federal Circuit Bar Association, *Model Patent Jury Instructions*, B.2.3 (2008); *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332 (Fed. Cir. 2005); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Wang Labs. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993).

**CPI Proposes**

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.

CPI's Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 7.1; *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 864 (Fed. Cir. 1993); *In re Clay,* 966 F.2d 656, 658-59 (Fed. Cir. 1992); *In re Wood,* 599 F.2d 1032, 1036-37 (C.C.P.A. 1979)

**Differences Between the Claimed Invention and the Prior Art**

**WhitServe Proposes**

You should analyze the differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention.  In analyzing this issue, do not focus solely on the differences between the prior art and the inventions because the test is not whether there are differences.  Rather, the test is whether or not each invention, as a whole, would have been obvious to one having ordinary skill in view of all the prior art at the time of each invention was made.

A patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art.  In analyzing the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention.

A factor weighing against a determination of obviousness is when the function of the claimed element is different from the prior art.  Another factor weighing against a determination of obviousness is when a prior art reference teaches away the elements of a claim, i.e. the prior art suggests a different solution to one skilled in the art than the solution claimed by the patent.  Further, a claim is not obvious when the claimed invention is beyond the ordinary skill in the art.  Still further, when considering whether CPi has met its burden, it is necessary to consider whether CPi has established a reason that would have prompted a person of ordinary skill in the relevant field to arrive at each claim.

<u>WhitServe's Authority</u>:

The Federal Circuit Bar Association, *Model Patent Jury Instructions*, B.4.3bi, ii (2008); 35 U.S.C. § 103; *KSR Intern. Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1739–40, 42 (2007); *Graham v. John Deere Co.*, 383 U.S. 1 (1966); In re Translogic Technology Inc., 504 F.3d 1249 (Fed. Cir. 2007); *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332 (Fed. Cir. 2005); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Wang Labs. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993).


**CPI Proposes**

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of any such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

49

CPI's Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 7.5; *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727, 1742-43,(2007); *Graham v. John Deere Co.,* 383 U.S. 1 (1966); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530 (Fed. Cir. 1983); *Medtronic, Inc., v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563 (Fed. Cir. 1983).

## **Level of Ordinary Skill**

### **CPi proposes**

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the art.  The person of ordinary skill is presumed to know all prior art that you have  determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that case use common sense to solve problems.

WhitServe contends that a person of ordinary skill in the art relevant to the WhitServe patents would have been a professional, such as a lawyer or medical professional that provides professional services to clients and manages organizations that enable professional services to be provided to clients. According to WhitServe, such an individual would have a bachelor's degree or advanced degree that is focused on a particular professional field and that individual would have 3 to 4 years of experience in a professional field.  According to WhitServe, such an individual would have practical knowledge of computer systems through operation and use, but would not have a formal education on computer systems.

CPi contends that the level of ordinary skill in the art relevant to the WhitServe patents would have been a person holding a Bachelor of Science Degree in Electrical Engineering, Computer Science, or Computer Engineering.  In addition, CPi contends that such a person would have had at least two years of work experience with the implementation of computer systems involving databases, forms collections, email systems, and web server systems and would have knowledge of the techniques for implementing automated processes, such as

automatic report generation, automatic reminder notification, and automatic transmitting/receiving of files or emails without human intervention, as well as data backup and restoration.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

- the level of education and experience of persons actively working in the field at the time of the invention;

- the types of problems encountered in the art at the time of the invention; and

- the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made at the time of the inventions.

Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 7.6; *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727, 1742-43,(2007); *Graham v. John Deere Co.,* 383 U.S. 1 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Envtl. Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693 (Fed. Cir. 1983).]

**WhitServe proposes**

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the art.  The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

WhitServe contends that a person of ordinary skill in the art relevant to the WhitServe patents would have been a professional, such as a lawyer or medical professional that provides

professional services to clients and manages organizations that enable professional services to be provided to clients. According to WhitServe, such an individual would have a bachelor's degree or advanced degree that is focused on a particular professional field and that individual would have 3 to 4 years of experience in a professional field. According to WhitServe, such an individual would have practical knowledge of computer systems through operation and use, but would not have a formal education on computer systems.

CPi contends that the level of ordinary skill in the art relevant to the WhitServe patents would have been a person holding a Bachelor of Science Degree in Electrical Engineering, Computer Science, or Computer Engineering. In addition, CPi contends that such a person would have had at least two years of work experience with the implementation of computer systems involving databases, forms collections, email systems, and web server systems and would have knowledge of the techniques for implementing automated processes, such as automatic report generation, automatic reminder notification, and automatic transmitting/receiving of files or emails without human intervention, as well as data backup and restoration.

It is for you to decide what the level of ordinary skill was at the time the inventions were made based on the evidence presented to you in this ease. In doing so, you may consider any evidence relating to this issue that is introduced at trial, including in particular any evidence introduced of:

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

- the educational level and experience of the inventor at the time the inventions were made;

- the level of education and experience of persons actively working in the field of the inventions at the time of the inventions;

- the teachings and disclosures of prior art references such as patents and publications;

- the types of problems encountered in the field of the invention at the time of the invention; and the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made at the time of the inventions.

Authority:

The Federal Circuit Bar Association, *Model Patent Jury Instructions*, B.4.3biii (2008); AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 7.6; *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727, 1742-43,(2007); *Graham v. John Deere Co.,* 383 U.S. 1 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Envtl. Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693 (Fed. Cir. 1983).]

**Factors Indicating Nonobviousness**

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.

1. Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2. Was there long felt need for a solution to the problem facing the inventors which was satisfied by the claimed invention?

3. Did others try, but fail, to solve the problem solved by the claimed invention?

4. Did others copy the claimed invention?

5. Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6. Did others in the field praise the claimed invention or express surprise at the making of the claimed invention?

7. [**CPi proposes**: Did others accept licenses under the WhitServe patents because of the merits of the claimed invention?]

   [**WhitServe proposes:** Did others accept licenses under the WhitServe patents?]

8. [**WhitServe proposal: Whether the claimed invention was directed at solving a problem which was not yet fully appreciated by those skilled in the art**.]

9. [**WhitServe proposal:  Whether or not a significant amount of time elapsed between the inventors conception of the invention and the development by others**.]

10. [**WhitServe proposal:  Whether or not the claimed invention revolutionized the industry.**]

11. [**WhitServe proposal:  Whether others in the industry have accepted licenses for substantial value.** *WMS Gaming Inc. v. Int'l Game Tech.*, **184 F.3d 1339, 1359 (Fed. Cir. 1999);** *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, **392 F.3d 1317, 1324 (Fed. Cir. 2005).**]

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.


Authority:

The Federal Circuit Bar Association, *Model Patent Jury Instructions*, B.4.3biv (2008); AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 7.7;*Graham v. John Deere Co.*, 383 U.S. 1 (1966); *United States v.* Adams, 383 U.S. 39, 52, 86 S.Ct. 708, 714-15 (1966); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693 (Fed. Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 155-56 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

**Inequitable Conduct**

Proposed Jury Instruction No. 17:

**Inequitable Conduct**
**[WhitServe objects to this instruction as it is an equitable determination for the Court.**
**Nevertheless if the Court decides to submit an instruction to the Jury WhitServe submits a**
**proposal below.]**

**WhitServe Proposes**

CPi contends that WhitServe may not enforce the WhitServe patents against CPi because

CPi alleges that WhitServe engaged in inequitable conduct before the Patent and Trademark

Office during prosecution of the '468, '801, and '078 patents.  Question 4 of the Verdict Form

reads as follows:

> Has CPi proven that it is highly probable that the WhitServe patents were
> obtained through inequitable conduct?  Answer the question by checking either
> yes or no.  A "yes" answer means the WhitServe patents were obtained through
> inequitable conduct.  A "no" answer means the WhitServe patents were not
> obtained through inequitable conduct.

Because a finding of inequitable conduct completely extinguishes a patent holder's right

to prevent others from using an invention, the burden of proving inequitable conduct is high.  An

alleged infringer must prove that inequitable conduct occurred during the examination of a patent

by clear and convincing evidence.  That is, based on the evidence presented to you in this case

you must have a clear conviction that inequitable conduct occurred in connection with each of

the WhitServe patents in order for it to be considered unenforceable.

To prove that inequitable conduct occurred, CPi must prove for each patent by clear and

convincing evidence both that a person meaningfully involved in the prosecution of the patent

withheld material information or submitted materially false information or statements to the

USPTO during the examination of the patent, and that the person did so with an intent to deceive

the Examiner into issuing the patent.  Therefore, you must find both "materiality" and an "intent to deceive."

Information is material if it establishes, that the invention sought to be patented more likely than not failed to satisfy a requirement for a valid patent or that a reasonable patent examiner more likely than not would not have allowed a claim of the patent application if that information would have been given to the examiner.  Information that is cumulative of, or less relevant to any patentability requirement compared to information the Examiner already had from any source, is not material and need not be submitted to the Examiner (because the Examiner already had similar information on which to make a judgment on patentability).

If you determine that material information was withheld or misrepresented to the PTO, you must next determine whether such information was withheld or misrepresented with the intent to deceive or mislead the PTO.  If the failure to disclose material information occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct.

If you determine that CPi has proven by clear and convincing evidence both that material information was withheld or misrepresented and there was an intent to deceive or mislead the PTO, you must then balance the degree of materiality and the degree of intent to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct committed in the prosecution of the '468, '801, and '078 patents. When performing this balancing, the higher the level of materiality of the withheld information, the lower the level of intent that is required to establish inequitable conduct, and vice versa. Materiality and intent to deceive are separate issues: proof of materiality does not give rise to an inference of intent to deceive, and proof of intent to deceive does not give rise to an inference of

materiality.  There must be evidence that establishes materiality and there must be evidence that establishes intent to deceive.  If evidence of either, or both, is missing, there can be no inequitable conduct.

Although the question of whether there has been inequitable conduct is one that I will decide, I will ask for your findings so that I can consider them in making my decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

**WhitServe's Authority:**
The Federal Circuit Bar Association, *Model Patent Jury Instructions*, B.5.1 (2010); 37 C.F.R. § 1.56 (2003); *Astrazeneca Pharmaceuticals LP v. Teva Pharmaceuticals USA, Inc.*, 583 F.3d 766 (Fed. Cir. 2009); Young v. Lumenis Inc., 83 USPQ2d 1191 (Fed. Cir. 2007); Adenta GmbH v. OrthoArm Inc., 501 F.3d 1364 (Fed. Cir. 2007); Honeywell International Inc. v. Universal Avionics Systems Corp., 488 F.3d 982 (Fed. Cir. 2007); *Digital Control Incorporated and Merlin Technology Inc., v. The Charles Machine Works*, No. 05-1128 (Fed. Cir. 2006); *Ferring B. V, et al. v. Barr Laboratories, Inc.*, No. 05-1284 (Fed. Cir. Feb. 15, 2006); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1363 (Fed. Cir. 2003); *Upjohn Co. v. Mova Pharmaceutical Corp.*, 225 F.3d 1306 (Fed. Cir. 2000); *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565 (Fed. Cir. 1991); *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed. Cir. 1988).

## CPI Proposes

CPi contends that WhitServe may not enforce the WhitServe patents against CPi because CPi alleges that WhitServe engaged in inequitable conduct before the Patent and Trademark Office during prosecution of the '468, '801, and '078 patents.

Applicants for a patent have a duty to prosecute patent applications in the Patent and Trademark Office with candor, good faith and honesty.  This duty of candor and good faith extends to all inventors named on a patent application, all patent attorneys and patent agents involved in preparing and prosecuting the application, and every other

person involved in a substantial way with the prosecution of the patent application.  An intentional failure to meet this duty of candor and good faith is referred to as "inequitable conduct."

In this case, CPi asserts that Mr. Whitmyer had knowledge of, but did not disclose to the PTO, a prior art publication known as the EDSI PerfectLaw Docket 2.0 system reference manual.  CPi further asserts that the EDSI PerfectLaw Docket 2.0 system reference manual would have been important to a reasonable patent examiner determining patentability of the '468, '078 and '801 patents, and was intentionally withheld from the PTO with an intent to deceive or mislead.

CPi bears the burden of establishing inequitable conduct by clear and convincing evidence.  To determine whether the WhitServe patents were obtained through inequitable conduct, you must determine whether a person having this duty of candor and good faith withheld or misrepresented information, or submitted false information, that was material to the examination of the patent application, and that this individual or individuals acted with an intent to deceive or mislead the PTO.

CPI's Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 11.0; *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309 (Fed. Cir. 2006); *Cargill Inc. v. Canbra Foods, Ltd.,* 476 F.3d 1359 (Fed. Cir. 2007); *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129 (Fed. Cir. 2007); *Purdue Pharma L.P. v. Endo harm. Inc.*, 438 F.3d 1123 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp*, 265 F.3d 1268 (Fed. Cir. 2001); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997).  37 C.F.R. § 1.56 (2003); Young v. Lumenis Inc., 83 USPQ2d 1191 (Fed. Cir. 2007); Adenta GmbH v. OrthoArm Inc., 501 F.3d 1364 (Fed. Cir. 2007); Honeywell International Inc. v. Universal Avionics Systems Corp., 488 F.3d 982 (Fed. Cir. 2007).

**Materiality**

**WhitServe Proposes**

WhitServe's proposed instruction on materiality is addressed in the general instruction on inequitable conduct.

**CPi Proposes**

CPi contends that the 1994 Perfect Law Docket 2.0 Training Manual and corresponding product, was information known Mr. Whitmyer, the inventor of the WhitServe patents and a person with this duty of good faith and candor, and that this information was withheld from the Patent and Trademark Office by Mr. Whitmyer during the prosecution of the '468, '078 and '801 patents.  If you find that Mr. Whitmyer withheld or misrepresented information when applying for the '468, '078, and '801 patents, you must determine whether that information was material information.

Information is material if there is a substantial likelihood that a reasonable patent examiner would consider it important in deciding whether or not to allow the application to issue as a patent. For example, information is material if it establishes, either alone or in combination with other information, that a claim of the patent application would more likely than not meet one of the requirements for a patent. Information is also material if it refutes or is inconsistent with the information provided to the Patent and Trademark Office or arguments made by the applicant to persuade the Patent and Trademark Office that the invention is entitled to patent protection. Information that is "cumulative" of, or adds little to, other information the examiner already had is not material.

CPI's Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 11.1; 37 C.F.R. §1.56 (2007); *Purdue Pharma L.P. v. Endo harm. Inc.*, 438 F.3d 1123 (Fed. Cir. 2003)("new [1992] standard was not intended to constitute a significant substantive break with the pre-1992 standard"); *Cargill Inc. v. Canbra Foods, Ltd.,* 476 F.3d 1359 (Fed. Cir. 2007); *eSpeed, Inc. v. BrokerTec USA, L.L.C.,* 480 F.3d 1129 (Fed. Cir. 2007); *Flex-Rest, LLC v. Steelcase, Inc.,* 455 F3d 1351 (Fed. Cir. 2006); *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309 (Fed. Cir. 2006); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358 (Fed. Cir. 2003); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315 (Fed. Cir. 2000); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997).


**Intent to Deceive or Mislead**

**WhitServe Proposes**

WhitServe's proposed instruction on intent is addressed in the general instruction on inequitable conduct.  WhitServe objects to CPi's proposed instruction for Intent to Deceive or Mislead as it improperly states the law on finding intent.  CPi's instruction simply states that "the law allows deceptive intent to be inferred."  However, "[w]hile deceptive intent can be inferred from circumstantial evidence, the circumstantial evidence must still be clear and convincing.  'Further, the inference must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard.' Relatedly, just as merely withholding a reference cannot support an inference of deceptive intent, so too an accused infringer cannot carry its threshold burden simply by pointing to the absence of a credible good faith explanation." *Larson Mfg. Co. of South Dakota, Inc. v. Aluminart Products Ltd.*, 559 F.3d 1317 (Fed. Cir. 2009).  Furthermore, CPi bears the initial burden of showing sufficient evidence to support intent to deceive before the patentee has any obligation to provide a good faith

explanation to negate that inference. *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d

1357, 1368, (Fed. Cir. 2008).


**CPI Proposes**

If you determine that material information was withheld from or misrepresented to the

Patent and Trademark Office, you must next determine whether this was done with an intent to

deceive or mislead the Patent and Trademark Office.  Intent to deceive the Patent and Trademark

Office may be found from direct evidence.  Such direct evidence is rare, however, and as a

result, the law allows deceptive intent to be inferred from the facts and surrounding

circumstances.

When a patentee, such as Mr. Whitmyer, knowingly withholds material information,

misrepresents a material fact or submits false material information, and when the natural

consequence of those intentional acts would be to deceive the Patent and Trademark Office, an

inference that the patentee intended to deceive may be appropriate.  Simple negligence is

insufficient for a holding of inequitable conduct.  In determining whether or not there was intent

to deceive or mislead the Patent and Trademark Office, you should consider the totality of the

circumstances, including the nature of the conduct, evidence of the absence or presence of good

faith and Mr. Whitmyer's experience as a patent attorney.


**CPI's Authority:**


AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 11.2; *Cargill Inc. v. Canbra
Foods, Ltd.*, 476 F. 3d 1359 (Fed. Cir. 2007); eSpeed*, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d
1129 (Fed. Cir. 2007); *Purdue Pharma L.P. v. Endo Pharm. Inc.,* 438 F. 3d 1123 (Fed. Cir.
2006); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003);
*GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268(Fed. Cir. 2001); *PerSeptive Biosystems, Inc. v.
Pharmacia Biotech, Inc.*, 225 F.3d 1315 (Fed. Cir. 2000); *Semiconductor Energy Laboratory*

*Co., Ltd. v. Samsung Electronics Co., Ltd.*, 204 F.3d 1368, 1374-75 (Fed. Cir. 2000); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997); *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066 (Fed. Cir. 1992).

## Balancing of Materiality and Intent

### WhitServe Proposes

WhitServe's proposed instruction on balancing materiality and intent is addressed in the general instruction on inequitable conduct.

### CPI Proposes

If CPi has proven by clear and convincing evidence that information was withheld or misrepresented by a person with the duty of good faith and candor, you must then balance the degree of materiality and the degree of intent to deceive or mislead the Patent and Trademark Office to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct committed in the prosecution of the WhitServe patents. Where the materiality of the withheld or misrepresented information is high, the showing of intent needed to establish inequitable conduct is proportionally less. Likewise, when the showing of intent is high, the showing of materiality may be proportionally less.

Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 11.3; *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1135 (Fed. Cir. 2007) ("Once a district court has found a threshold level of both materiality and intent to deceive, the district court must balance the evidence to determine if equity should render the patent unenforceable"); *Cargill Inc. v. Canbra Foods, Ltd.*, 476 F. 3d 1359 (Fed. Cir. 2007); *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F. 3d 1123 (Fed. Cir. 2006); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268 (Fed. Cir. 2001); *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 693 (Fed.Cir.2001); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315 (Fed. Cir. 2000); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997).

**Damages**

Proposed Jury Instruction No. 18:

**Damages – Generally**

**<u>WhitServe Proposes</u>**

If you find that one of the accused products infringe any of the asserted claims of the WhitServe patents, and that these claims are not invalid, you must determine the amount of damages to be awarded WhitServe for the infringement.

The amount of those damages must be adequate to compensate WhitServe for the infringement.  Your damage award should put WhitServe in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty.  You may not add anything to the amount of damages to punish the accused infringer or to set an example.

You should award only those damages that WhitServe establishes that it more likely than not suffered.  While WhitServe is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. To the extent CPi contends that the amount of damages should be reduced or offset, CPi must prove the amount of such reduction or offset. When the amount of damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of WhitServe.

**WhitServe Authority**

The Federal Circuit Bar Association, *Model Patent Jury Instructions*, B.6.1 (2008); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Integra Lifesciences I, Ltd. v. Merck KGgaA*, 331 F.3d 860, 870 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. I Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

<u>**CPI Proposes**</u>

If you find that one of the accused products infringe any of the asserted claims of the WhitServe patents, and that these claims are not invalid, you must determine the amount of damages to be awarded WhitServe for the infringement. On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you need not address damages in your deliberations.

If you need to determine damages, the amount of those damages must be adequate to compensate WhitServe for the infringement. Your damage award should put WhitServe in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty. You may not add anything to the amount of damages to punish the accused infringer or to set an example.

WhitServe has the burden of proving each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of WhitServe.

<u>CPI Authority</u>:

65

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 12.0; ;35 U.S.C. § 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.,* 341 F. 3d 1370, 1381-82 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.,* 278 F.3d 1366, 1376 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1108-1109 (Fed. Cir. 1996); *Hebert v. Lisle Corp.,* 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed. Cir. 1988); *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed. Cir. 1987).


## Date Damages Begin

The parties have agreed that March 1, 2002, is the earliest date at which patent damages begin to be calculated.


## Reasonable Royalty

If CPi is found to infringe the WhitServe patents, the patent law specifically provides that the amount of damages that CPi must pay WhitServe for infringing WhitServe's patent may not be less than a reasonable royalty for the right to make, use, or sell the claimed invention.  A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. In this case, however, WhitServe has not sought any other measure of patent damages.


Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 12.14; 35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1354 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.,* 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1579 (Fed. Cir. 1989).

**Reasonable Royalty – Definition**

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.  A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner, WhitServe in this case, and a company in the position of CPi taking place just before the infringement began. You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license.

Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 12.15; *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *modified and aff'd sub nom., Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc.,* 446 F.2d 295 (2d Cir. 1971).

**Damages**

Proposed Jury Instruction No. 19:

**Reasonable Royalty – Relevant Factors**

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1. Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by CPi to license other patents comparable to the WhitServe patents.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6. The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7. The duration of the WhitServe patents and the term of the license.

8.  The established profitability of the product made under the WhitServe patents; its commercial success; and its current popularity.

9.  The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which CPi has made use of the invention; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee (such as CPi) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. **[Whitserve Proposes:** "the benefits to those who have used the invention, the extent to which the infringer has made use of the invention, any evidence probative of the value of that use, and the opinion testimony of qualified experts." (Ruling on Mot.'s For Summ. J. at 24).**]**

17.  **[Whitserve Proposes** "Adequate damages should approximate those damages that will fully compensate the patentee for infringement.  Further, the Supreme Court has cautioned against imposing limitations on patent infringement damages.  Thus, although an infringer's anticipated profit from the use of the patented invention is among the factors to be considered in determining a reasonable royalty, the law does not require that an infringer be permitted to make a profit.  The court concludes that the revenues received by CPI's customers from their own clients constitute a factor that is properly considered in determining any damages in this case.  There is no dispute that CPI's customers used the products that allegedly infringe WhitServe's patents, and that CPI's customers received revenues from their clients in connection with that use.  Such revenues reflect the benefits to those who have used the invention and the value of that use, and thus are relevant to determining what constitutes a reasonable royalty." (Ruling on Mot.'s For Summ. J. at 24-25).**]**

18. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 12.16; *Monsanto Co. v. McFarling,* 488 F.3d 973 (Fed. Cir. 2007); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*

**Damages**

Proposed Jury Instruction No. 20:

**Reasonable Royalty** – **Timing**

**CPi proposes:**

Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profits by CPi after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time.  You may only consider this information, however, if it was foreseeable at the time that the infringement began.

Authority:

AIPLA's Model Patent Jury Instructions, Post-Trial Instructions 12.17;  *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446, 1448 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988); *Studiengesellschaft Kohle, mbH v. Dart Indus.*, Inc., 862 F.2d 1564, 1571-72 (Fed. Cir. 1988)]

**WhitServe proposes:**

Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profits by CPi after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time.  That evidence can be considered only to the extent that that evidence aids in you assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits CPi made may aid you in determining the anticipated profits at the time of the

hypothetical negotiation, you may not limit or increase the royalty based on the actual profits CPi

made.

<u>Authority</u>:
The Federal Circuit Bar Association, *Model Patent Jury Instructions*, B. 6.7 (2008); AIPLA's
Model Patent Jury Instructions, Post-Trial Instructions 12.17;  *Trell v. Marlee Elecs. Corp.*, 912
F.2d 1443, 1446, 1448 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573,
1581 (Fed. Cir. 1989); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed.
Cir. 1988); *Studiengesellschaft Kohle, mbH v. Dart Indus.*, Inc., 862 F.2d 1564, 1571-72 (Fed.
Cir. 1988).

**Damages**

Proposed Jury Instruction No. 21:

**Convoyed Sales**

**WhitServe submits this instruction is not necessary as convoyed sales are no longer an issue.**

**Damages**

Proposed Jury Instruction No. 22:

**Damages Based on Revenues Received By Third Parties**

**WhitServe Proposes**

In addition to seeking damages based on revenues received by CPi, WhitServe seeks damages based on revenues and value received by CPi's customers due to their use of CPi's Desktop and Hosted EARS products.  A patent can be infringed by more than one person.  A patent is infringed by a person that manufactures an infringing product and a person that acquires and uses the infringing product.  A patent is also infringed when two persons work in concert or cooperation to perform the claim limitations.   When a patent is infringed by more than one person, the patentee is entitled to damages for the full scope of infringement and each person that infringes is liable for the full amount of damages.  This is known as joint and several liability.

"Adequate damages should approximate those damages that will fully compensate the patentee for infringement.  Further, the Supreme Court has cautioned against imposing limitations on patent infringement damages.  Thus, although an infringer's anticipated profit from the use of the patented invention is among the factors to be considered in determining a reasonable royalty, the law does not require that an infringer be permitted to make a profit.  The court concludes that the revenues received by CPI's customers from their own clients constitute a factor that is properly considered in determining any damages in this case.  There is no dispute

that CPI's customers used the products that allegedly infringe WhitServe's patents, and that

CPI's customers received revenues from their clients in connection with that use.  Such revenues

reflect the benefits to those who have used the invention and the value of that use, and thus are

relevant to determining what constitutes a reasonable royalty." (Ruling on Mot.'s For Summ. J.

at 24-25).

When determining the reasonable royalty amount, you need to consider the amount of

damages WhitServe is entitled to as a result of the infringing use of Desktop and Hosted EARS

by law firms and corporations.  This amount must be reflected in your damages award to

WhitServe.

**WhitServe Authority**

35 U.S.C. § 284; Aro Manufacturing Co. v. Convertible Top Replacement, 377 U.S. 476, 499-
501 (1964);  *BMC Resources Inc. v. Paymentech LP*, 498 F.3d 1373, 1382 (Fed. Cir. 2007);
*Glenayre Electronics, Inc. v. Jackson*, 443 F.3d 851, 856 (Fed. Cir. 2006); Shockley v. Arcan,
Inc., 248 F.3d 1349, 1364 (Fed. Cir. 2001); *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 (Fed.
Cir. 1983); Conopco, Inc. v. May Dept. Stores Co., 797 F. Supp. 740, 744 (E.D. Mo. 1992);
*Solomon v. Greco*, 1990 WL 152562, *9 (E.D.N.Y. 1990); *Syntex (U.S.A.) Inc. v. Paragon
Optical Inc.*, 7 USPQ.2d 1001, 1024-25 (D. Ariz. 1987); 7 Donald S. Chisum, Chisum on Patents
§20.03[7][b][iv], n. 82 (2001)

**CPI Proposes**

In addition to seeking damages based on revenues received by CPi, WhitServe

additionally seeks damages based on revenues and value allegedly received by CPi's customers

due to their use of CPi's EARS product.  In order to recover such damages, WhitServe must

prove by a preponderance of the evidence that there was a prior course of dealing between CPi

and its customers or some other evidence to suggest that CPi would have agreed to pay

additional royalties based on revenues and value allegedly received by its customers.  If there is

no such prior course of dealing or other evidence that CPi would have been willing to pay such

additional royalties, you may not award damages based on the revenue or value received by such third parties.


**CPI Authority**:

*Mitutoyo Corp. v. Central Purchasing, LLC*, 499 F.3d 1284, 1292 (Fed. Cir. 2007); *Foster*, 492 F.2d at 1322.


**Equitable Estoppel** [If Submitted To The Jury]

Proposed Jury Instruction No. 23:

**WhitServe objects to the presentation of evidence to the jury on equitable estoppel and objects to this instruction because the equitable defense of equitable estoppel is relevant to no issue the jury will decide and is unfairly prejudicial to WhitServe.** ***See In re Seagate Tech.*, LLC, 497 F.3d 1360 (Fed. Cir. 2007) (en banc);** *see also Pioneer Hybrid Int'l, Inc. v. Ottawa Plant Food, Inc.*, **219 F.R.D. 135, 149 (N.D. Iowa 2003).**

**WhitServe Proposes**

CPi raises the affirmative defenses of equitable estoppel; that is, CPi contends that WhitServe may not enforce the '468, '078 and '801 patents against CPi because CPi asserts that WhitServe made a misleading communication about infringement of Desktop EARS before WhitServe filed this lawsuit.

The owner of a patent may forfeit its right to any relief from an infringer where: 1) the patent holder has knowledge of the true facts and communicates something to the infringing party about the lack of infringement in a misleading way, 2) the infringer relies upon the misleading communication from the patent holder, and 3) the infringer will be significantly harmed if the patent holder is allowed to assert a claim relating to the issue that is inconsistent

with the patent holder's prior misleading communication about the issue.  CPi must prove each of

the three elements above by a preponderance of the evidence, but even if all these elements are

proven, equitable estoppel need not be found if such a finding would be unfair in light of the

conduct of the parties.  Furthermore, equitable estoppel is a product specific defense; therefore, if

a patentee only communicates with an accused infringer regarding one specific product, an

estoppel as to that product will not apply to any other of the accused infringers products.

A communication may be made through written or spoken words, conduct, silence, or a

combination of words, conduct, and silence.  Conduct may include action or inaction.  However,

silence alone does not create an estoppel.  Whether in fact WhitServe communicated with CPi

about non-infringement of Desktop EARS prior to the filing of this lawsuit, and whether in fact

that communication was made with knowledge of the true facts, are questions that must be

answered by considering the facts and circumstances as they existed at the time and in the way

that reasonably prudent businesspeople would have viewed them.  However, CPi cannot rely on

a communication if it engages in egregious conduct, such as misrepresenting the characteristics

of the products at issue to WhitServe.  Furthermore, WhitServe's prior lawsuit against CPi was

dismissed without prejudice, which means that it was removed from the court's docket in such a

way that WhitServe may refile the same suit on the same claim.

In order to show reliance, the defendant must demonstrate, by fact, that it substantially

and reasonably relied on misleading conduct of the patent holder in continuing to sell its

products.  A business judgment to continue to sell a product negates a finding of reliance.

Further, reliance is diminished when the defendant believed that it did not infringe because it

believed that the patent was invalid.  Also, reliance on a communication may not exist if at the

time of the communication the amount of damages at issue was *de minimis*.  An infringer cannot

rely on a patent owners representations if the infringer misrepresented or did not fully disclose the characteristics of its products.

Material prejudice may either be economic or evidentiary.  An accused infringer may demonstrate evidentiary prejudice by showing impairment of its ability to present a full and fair defense on the merits of the case, due to the loss of records, the death of a witness or the unreliability of memories of long past events.  Conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient.  Rather, an accused infringer must show exactly what particular prejudice it suffered from the absence of these witnesses or evidence.  For example, in order to demonstrate evidentiary prejudice, the infringer must demonstrate how lost documents and testimony of employees or other witnesses would be important to a defense, or to the extent the testimony was important, why the witnesses could not be subpoenaed.

Whether CPi suffered economic prejudice is a question that must be answered by evaluating whether CPi changed its economic position in a significant way as a result of its reliance on a misleading communication from WhitServe about the infringement of Desktop EARS, and whether CPi's losses as a result of any change in economic position could have been avoided if WhitServe had not communicated with CPi in a misleading way.  Having to pay damages to WhitServe if found to infringe on its patent does not amount to economic prejudice by itself; rather, CPi's liability for infringement damages or any other economic losses that CPi may incur if WhitServe is allowed to proceed with its claims must have been avoidable if WhitServe had not communicated with CPi in a misleading way.

Although the question of whether equitable estoppel applies in this case is one that I will decide, I will ask for your findings so that I can consider them in making that decision.  You

should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

**WhitServe's Authority**

The Federal Circuit Bar Association, *Model Patent Jury Instructions*, B.5.3 (2008); 35 U.S.C. § 282; *A.C. Aukerman Co. v. R.L. Chaides Canstr. Co.*, 960 F.2d 1020, 1043, 1044 (Fed. Cir. 1992)(*en banc*); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995); *Hemstreet v. Computer Energy Sys. Corp.,* 972 F.2d 1290, 1294-95 (Fed. Cir. 1992); *Myer v. Brooks Shoe, Inc.,*912 F.2d 1459, 1463 (Fed. Cir. 1990); *Nursery Supplies Inc. v. Lerio Corp.,*45 U.S.P.Q.2d 1332, 1342 (M.D. Pa. 1997); *Wafer Shave, Inc. v. Gillette Co.* 857 F.Supp. 112, 126-27 (D. Mass. 1993); *B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.3d 1419, 1425 (Fed. Cir. 1997); Meyers v. Asics Corp., 974 F.2d 1304, 1308 (Fed. Cir. 1992); Black's Law Dictionary (8th ed. 2004).

**CPI Proposes**

CPi raises the affirmative defenses of equitable estoppel; that is, CPi contends that WhitServe may not enforce the '468, '078 and '801 patents against CPi because WhitServe, by affirmative acts or by silence, has lulled CPi into a sense of security and induced CPi over a period of time to incur expenses and possible losses which otherwise would have been wholly unnecessary.  The defense of equitable estoppel is a complete bar to a claim of patent infringement.

To prevail on an equitable estoppel defense, CPI must prove by a preponderance of the evidence that: (1) WhitServe, through misleading conduct, led CPi to reasonably infer that WhitServe did not intend to enforce the '468, '078 and '801 patents against CPi; (2) CPi relied upon the action of WhitServe; and (3) as a result of this reliance, CPi will now be materially prejudiced if WhitServe is allowed to proceed with its claim.

Misleading conduct may be found, for example, where the patentee and accused infringer meet to discuss infringement, the accused infringer asserts at the meeting that he did not infringe the patent, and the patentee waits several years before further pursuing its patent infringement lawsuit.  Misleading conduct may also be found, for example, where a patentee once threatened prompt and vigorous enforcement of its patents against an accused infringer and then, following such threat, delayed for an unreasonable and unexcused period before filing suit to enforce the patents.

In evaluating whether an accused infringer reasonably relied on conduct of the patentee, you must look at the conduct of the parties and decide that the accused infringer had a relationship with the patentee that lulled the accused infringer into a sense of security that it would not be sued.  Where a patentee discontinues correspondence with respect to the asserted patents, this gives rise to an inference that the patentee has abandoned its infringement claim against the accused infringer.  Continuing to advertise and sell the allegedly infringing product, and developing new, similar products, are also examples of reliance.

Material prejudice may either be economic or evidentiary.  An accused infringer may demonstrate evidentiary prejudice by showing impairment of its ability to present a full and fair defense on the merits of the case, due to the loss of records, the death of a witness or the unreliability of memories of long past events.  Alternatively an accused infringer may demonstrate economic prejudice in the form of loss of monetary investments or damages incurred which would have been prevented by earlier suit.

**CPI Authority**

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1063 (Fed. Cir. 1995); Gossen Corp. v. Marley Moldings, Inc., 977 F. Supp. 1346, 1353 (E.D. Wisc. 1977); *Scholle Corp. v.*

*Blackhawk Molding Co. Inc.*, 133 F.3d 1469, 1473 (Fed. Cir. 1998); *Wafer Shave, Inc., v. Gillette Co.*, 857 F. Supp. 112, 120-21, 125 (D. Mass. 1993) (finding misleading conduct where the patentee waited about three-and-a-half years to sue after the initial threat of litigation) aff'd without opinion, 26 F.3d 140 (Fed. Cir. 1994); *Encomp Inc. v. L-Com, Inc.*, 999 F. Supp. 264, 267, 269 (D. Conn. 1998.).

**Laches** [If Submitted To The Jury]

**[WhitServe objects to this instruction as it is an equitable determination for the Court. Nevertheless if the Court decides to submit an instruction to the Jury WhitServe submits a proposal below.]**

Proposed Jury Instruction No. 24:

**WhitServe Proposes**

CPi also raises the affirmative defenses of laches. The defense of laches bars recovery of damages for any infringing activity that occurred prior to the filing of suit.

The owner of a patent may not be entitled to recover damages for acts that occurred before it filed a lawsuit against an alleged infringer where: 1) the patent holder delayed filing the lawsuit for an unreasonably long period of time, 2) there was no excuse for the patent holder's delay in filing the lawsuit, and 3) the allegedly infringing party has been or will be prejudiced in a significant way due to the patent holder's delay in filing the lawsuit.

The delay that must be considered in this case is the period of time beginning when WhitServe first knew of, or reasonably should have known of, each of CPi's allegedly infringing activities and ending when WhitServe filed this lawsuit.

Whether WhitServe' s delay was unreasonably long is a question that must be answered by considering the facts and circumstances as they existed during each period of delay in the way that reasonably prudent businesspeople would have viewed them. Whether WhitServe's delay was justified or should be excused also is a question that must answered by considering the facts and circumstances as they existed during the period of delay in the way that reasonably prudent

businesspeople would have viewed them. While there is no set list of acceptable or unacceptable justifications for an otherwise unreasonable delay in bringing a lawsuit, and any particular justification or excuse offered by WhitServe in this case must be evaluated in light of the facts and circumstances that existed during the period of delay in this case, evidence of the following may serve as a justification or excuse for any unreasonable delay in the filing of this lawsuit:

      (1) being involved in other litigation during the period of delay;

      (2) being involved in negotiations with the allegedly infringing party during the period of delay;

      (3) poverty or illness during the period of delay;

      (4) wartime conditions during the period of delay;

      (5) being involved in a dispute about ownership of the patent during the period of delay; or

      (6) minimal amounts of allegedly infringing activity by CPi during the period of delay.

Material prejudice may either be economic or evidentiary.  An accused infringer may demonstrate evidentiary prejudice by showing impairment of its ability to present a full and fair defense on the merits of the case, due to the loss of records, the death of a witness or the unreliability of memories of long past events.   However, in order to demonstrate evidentiary prejudice, the defendant also demonstrate how lost documents and testimony of employees or other witnesses would be important to a defense, or to the extent the testimony was important, why the witnesses could not be subpoenaed.  Whether CPi suffered economic prejudice is a question that must be answered by evaluating whether CPi changed its economic position in a significant way as a result of its reliance on any misleading communication from WhitServe

about the infringement of Desktop EARS, and whether CPi's losses as a result of any change in economic position could have been avoided if WhitServe had not communicated with CPi in a misleading way. Having to pay damages to WhitServe if found to infringe on its patent does not amount to economic prejudice by itself; rather, CPi's liability for infringement damages or any other economic losses that CPi may incur if WhitServe is allowed to proceed with its claims must have been avoidable if WhitServe had not communicated with CPi in a misleading way.

If you find that WhitServe delayed filing this lawsuit for more than six years, then you must presume that all the elements of laches have been proved in this case unless you also find that the evidence introduced in this case proves that the delay in filing suit was reasonable or justified, or that CPi suffered no prejudice as a result of WhitServe's delay.

Although the question of whether WhitServe's right to damages is barred by laches is one that I will decide, I will ask for your findings so that I can consider them in making that decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

WhitServe's Authority

The Federal Circuit Bar Association, *Model Patent Jury Instructions*, B.5.2 (2008);35 U.S.C. § 282; A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020 (Fed. Cir. 1992)(en banc); Gasser Chair Co. v. Infanti Chair Mfg. Corp., 60 F.3d 770 (Fed. Cir. 1995).

**CPI Proposes**

CPi also raises the affirmative defenses of laches; that is, CPi contends that WhitServe waited too long in bringing suit and that CPI was prejudiced by the delay.  The

defense of laches bars recovery of damages for any infringing activity that occurred prior to the filing of suit.

    To prevail on a laches defense, CPI must prove by a preponderance of the evidence that: (1) WhitServe delayed filing suit for an unreasonable and inexcusable length of time after it knew or reasonably should have known of its cause of action against CPi; and (2) CPi suffered material prejudice attributable to the delay.

    Delay in filing a lawsuit is measured from the time WhitServe had actual or constructive knowledge of CPi's activity after the issuance of the WhitServe patents. The amount of delay does not have a minimum boundary, but rather it depends on the facts and circumstances of the case.  Where activities are pervasive, open, and notorious, there is a duty to investigate whether there is infringement, particularly when the activity is prevalent in the inventor's field of endeavor.

    As with equitable estoppel, a material change of economic position or loss of evidence constitutes prejudice.  You should apply the same analysis for the material prejudice requirement under laches and equitable estoppel.

CPI's Authority

*See Tech. For Energy Corp. v. Computational Sys., Inc.*, 92-1542, 92-1551, 1993 U.S. App. LEXIS 24556, at *17-*18, *21-*22 (Fed. Cir. Sept. 21, 1993) (unpublished).  *In re AI Realty Marketing of New York, Inc.*293 B.R. 586, 598 (Bkrtcy. S.D.N.Y. 2003); *Gossen Corp. v. Marley Moldings, Inc.*, 977 F. Supp. 1346, 1350 (E.D. Wisc. 1977); *Altech Controls Corp. v. EIL Instruments, Inc.*, 8 Fed. Appx. 941, 947 (Fed. Cir. 2001);  *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1550 (Fed. Cir. 1984); *Wafer Shave, Inc., v. Gillette Co.*, 857 F. Supp. 112, 128 (D. Mass. 1993), *aff'd without opinion*, 26 F.3d 140 (Fed. Cir. 1994); *Wanless v. Gen. Elec. Co.*, 148 F.3d 1334, 1338 (Fed. Cir. 1998) (stating that when an alleged infringer sells or markets the allegedly infringing product, the patent holder has duty to investigate whether there is infringement); *Adv. Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 479 (7th Cir. 1975).

Proposed Jury Instruction No. 25: [If Submitted To The Jury]

**Piercing the Corporate Veil:**

**WhitServe Proposes:**

This Jury Instruction should not be submitted to the jury because this is an equitable claim for relief and there are no issues of fact to be resolved by the jury.

**CPI Proposes:**

CPi contends that Mr. Whitmyer is the true owner of the '468, '078, '801 and '007 patents.  This is relevant because should you decide that CPi is not liable to WhitServe, under certain circumstances WhitServe, or Mr. Whitmyer could be held liable for CPi's attorneys fees should you find that that WhitServe is the alter ego, or simply an extension of Mr. Whitmyer.

The factors you are to consider in determining whether Mr. Whitmyer is the alter ego of WhitServe are the following:

1.   whether funds are put in and taken out of WhitServe for personal rather than corporate purposes;

2.   common office space, address, phones between WhitServe and Mr. Whitmyer;

3.   whether WhitServe and Mr. Whitmyer dealt with each other at arm's length; and

4.   whether WhitServe had property that was used by Mr. Whitmyer as if it were his own.

Authority:

*Hale Propeller, L.L.C. v. Ryan Marine Prods. Pty., Ltd.*, 98 F. Supp. 2d 260, 265 (D. Conn. 2000).

# VERDICT FORM

When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout the form.  Your answer to each question must be unanimous. Some of the questions contain legal terms that are defined and explained in detail in the Jury Instructions.

We, the jury, unanimously agree to the answers to the following questions and return them under the instructions of this court as our verdict in this case.

## FINDINGS ON INFRINGEMENT CLAIMS

(The questions regarding infringement should be answered regardless of your findings with respect to the validity or invalidity of the patent, or enforceability or unenforceability of the patent.)

**1. Infringement**

**WhitServe Proposes**

WhitServe has asserted that CPi's accused products infringe one or more claims of the WhitServe patents.  For each individual claim asserted by WhitServe answer the following question:

Has WhitServe proven that it is more likely than not that an asserted claim of the WhitServe patents is infringed by a CPi product?  Answer the question by checking either yes or no.  A "yes" answer means CPi infringes the asserted claim.  A "no" answer means CPi does not infringe the asserted claim.

Infringement of U.S. Patent No. 5,895,468

| | Desktop EARS/ TERMS | CPi OnLine | Hosted EARS | |
|---|---|---|---|---|
| Claim 1 of the '468 patent? | Yes_____ | Yes_____ | Yes_____ | No_____ |
| Claim 2 of the '468 patent? | Yes_____ | Yes_____ | Yes_____ | No_____ |
| Claim 3 of the '468 patent? | Yes_____ | Yes_____ | Yes_____ | No_____ |
| Claim 4 of the '468 patent? | Yes_____ | Yes_____ | Yes_____ | No_____ |
| Claim 5 of the '468 patent? | Yes_____ | | Yes_____ | No_____ |
| Claim 6 of the '468 patent? | Yes_____ | | Yes_____ | No_____ |
| Claim 7 of the '468 patent? | Yes_____ | | Yes_____ | No_____ |
| Claim 8 of the '468 patent? | Yes_____ | | Yes_____ | No_____ |
| Claim 9 of the '468 patent? | | | Yes_____ | No_____ |
| Claim 10 of the '468 patent? | | | Yes_____ | No_____ |
| Claim 11 of the '468 patent? | | | Yes_____ | No_____ |
| Claim 12 of the '468 patent? | | | Yes_____ | No_____ |
| Claim 17 of the '468 patent? | | | Yes_____ | No_____ |
| Claim 24 of the '468 patent? | Yes_____ | Yes_____ | Yes_____ | No_____ |
| Claim 25 of the '468 patent? | Yes_____ | Yes_____ | Yes_____ | No_____ |
| Claim 26 of the '468 patent? | Yes_____ | Yes_____ | Yes_____ | No_____ |
| Claim 27 of the '468 patent? | Yes_____ | Yes_____ | Yes_____ | No_____ |

Infringement of U.S. Patent No. 6,049,801

|                          | CPi OnLine          |
| ------------------------ | ------------------- |
| Claim 1 of the '801 patent? | Yes _____   No _____ |
| Claim 2 of the '801 patent? | Yes _____   No _____ |
| Claim 3 of the '801 patent? | Yes _____   No _____ |
| Claim 5 of the '801 patent? | Yes _____   No _____ |

Infringement of U.S. Patent No. 6,182,078

|                          | Desktop EARS /TERMS | CPi OnLine | Hosted EARS |          |
| ------------------------ | ------------------- | ---------- | ----------- | -------- |
| Claim 1 of the '078 patent?  | Yes_____ | Yes_____ | Yes_____ | No_____ |
| Claim 2 of the '078 patent?  | Yes_____ |          |          | No_____ |
| Claim 4 of the '078 patent?  | Yes_____ |          | Yes_____ | No_____ |
| Claim 5 of the '078 patent?  | Yes_____ |          |          | No_____ |
| Claim 6 of the '078 patent?  |          |          | Yes_____ | No_____ |
| Claim 7 of the '078 patent?  |          |          | Yes_____ | No_____ |
| Claim 8 of the '078 patent?  |          |          | Yes_____ | No_____ |
| Claim 9 of the '078 patent?  | Yes_____ | Yes_____ | Yes_____ | No_____ |
| Claim 10 of the '078 patent? | Yes_____ |          | Yes_____ | No_____ |
| Claim 11 of the '078 patent? |          | Yes_____ | Yes_____ | No_____ |

Infringement of U.S. Patent No. 6,981,007

|  | Desktop EARS | Hosted EARS | Hosted PMS |
|---|---|---|---|
| Claim 1 of the '007 patent? | | Yes_____ | Yes_____ | No_____ |
| Claim 2 of the '007 patent? | | Yes_____ | Yes_____ | No_____ |
| Claim 3 of the '007 patent? | | Yes_____ | Yes_____ | No_____ |
| Claim 7 of the '007 patent? | | Yes_____ | Yes_____ | No_____ |
| Claim 8 of the '007 patent? | | Yes_____ | Yes_____ | No_____ |
| Claim 9 of the '007 patent? | | Yes_____ | Yes_____ | No_____ |
| Claim 10 of the '007 patent? | Yes_____ | Yes_____ | Yes_____ | No_____ |
| Claim 11 of the '007 patent? | | Yes_____ | Yes_____ | No_____ |
| Claim 12 of the '007 patent? | | Yes_____ | Yes_____ | No_____ |
| Claim 13 of the '007 patent? | | Yes_____ | Yes_____ | No_____ |
| Claim 14 of the '007 patent? | | Yes_____ | Yes_____ | No_____ |
| Claim 15 of the '007 patent? | | Yes_____ | Yes_____ | No_____ |

**CPI Proposes**

WhitServe has asserted that CPi's accused products infringe one or more claims of the WhitServe patents.  For each individual claim asserted by WhitServe answer the following question:

Has WhitServe proven that it is more likely than not that an asserted claim of the WhitServe patents is infringed by EARS, TERMS and/or CPi On Line?  Answer the question by checking either "yes" under the product(s) found to infringe the claim or "no" if none of the CPi

products infringe that claim.  A "yes" answer means that particular CPi product infringes the

asserted claim.  A "no" answer means no CPi product infringes the asserted claim.

Infringement of U.S. Patent No. 5,895,468

|  | EARS | TERMS | CPI On Line | |
|---|---|---|---|---|
| Claim 1 of the '468 patent? | Yes _____ | Yes _____ | Yes _____ | No _____ |
| Claim 2 of the '468 patent? | Yes _____ | Yes _____ | Yes _____ | No _____ |
| Claim 3 of the '468 patent? | Yes _____ | Yes _____ | Yes _____ | No _____ |
| Claim 4 of the '468 patent? | Yes _____ | Yes _____ | Yes _____ | No _____ |
| Claim 5 of the '468 patent? | Yes _____ | Yes _____ |  | No _____ |
| Claim 6 of the '468 patent? | Yes _____ | Yes _____ |  | No _____ |
| Claim 7 of the '468 patent? | Yes _____ | Yes _____ |  | No _____ |
| Claim 8 of the '468 patent? | Yes _____ | Yes _____ |  | No _____ |
| Claim 24 of the '468 patent? | Yes _____ | Yes _____ | Yes _____ | No _____ |
| Claim 25 of the '468 patent? | Yes _____ | Yes _____ | Yes _____ | No _____ |
| Claim 26 of the '468 patent? | Yes _____ | Yes _____ | Yes _____ | No _____ |
| Claim 27 of the '468 patent? | Yes _____ | Yes _____ | Yes _____ | No _____ |

Infringement of U.S. Patent No. 6,049,801

|  | CPi OnLine | |
|---|---|---|
| Claim 1 of the '801 patent? | Yes _____ | No _____ |
| Claim 2 of the '801 patent? | Yes _____ | No _____ |
| Claim 3 of the '801 patent? | Yes _____ | No _____ |
| Claim 4 of the '801 patent? | Yes _____ | No _____ |
| Claim 5 of the '801 patent? | Yes _____ | No _____ |

Infringement of U.S. Patent No. 6,182,078

|  | EARS | TERMS | CPi OnLine | |
|---|---|---|---|---|
| Claim 1 of the '078 patent? | Yes _____ | Yes _____ | Yes _____ | No _____ |
| Claim 2 of the '078 patent? | Yes _____ | Yes _____ | | No _____ |
| Claim 3 of the '078 patent? | | | Yes _____ | No _____ |
| Claim 4 of the '078 patent? | Yes _____ | Yes _____ | | No _____ |
| Claim 5 of the '078 patent? | Yes _____ | Yes _____ | | No _____ |
| Claim 9 of the '078 patent? | Yes _____ | Yes _____ | Yes _____ | No _____ |
| Claim 10 of the '078 patent? | Yes _____ | Yes _____ | | No _____ |
| Claim 11 of the '078 patent? | | | Yes _____ | No _____ |

Infringement of U.S. Patent No. 6,981,007

|  | EARS with CPi OnLine | |
|---|---|---|
| Claim 10 of the '007 patent? | Yes _____ | No _____ |

**2. Willful Infringement**

WhitServe has asserted that CPi willfully infringed the WhitServe patent claims.  For each patent answer the following question:

Has WhitServe proven that CPi has willfully infringed the WhitServe patents?  Answer the question by checking either yes or no.  A "yes" answer means CPi willfully infringed the patent.  A "no" answer means CPi did not willfully infringe the patent.

<u>Willful Infringement</u>

U.S. Patent No. 5,895,468?   Yes \_\_\_\_\_      No \_\_\_\_\_

U.S. Patent No. 6,049,801?   Yes \_\_\_\_\_      No \_\_\_\_\_

U.S. Patent No. 6,182,078?   Yes \_\_\_\_\_      No \_\_\_\_\_

U.S. Patent No. 6,981,007?   Yes \_\_\_\_\_      No \_\_\_\_\_

**3. INVALIDITY**

CPi has asserted that the WhitServe patent claims are invalid.  For each individual claim asserted answer the following question:

Has CPi proven that it is highly probable that an asserted claim of the WhitServe patents if invalid? Answer the question by checking either yes or no.  A "yes" answer means the claim is invalid.  A "no" answer means the claim is valid.

Invalidity of U.S. Patent No. 5,895,468

Claim 1 of the '468 patent?    Yes _____        No _____

Claim 2 of the '468 patent?    Yes _____        No _____

Claim 3 of the '468 patent?    Yes _____        No _____

Claim 4 of the '468 patent?    Yes _____        No _____

Claim 5 of the '468 patent?    Yes _____        No _____

Claim 6 of the '468 patent?    Yes _____        No _____

Claim 7 of the '468 patent?    Yes _____        No _____

Claim 8 of the '468 patent?    Yes _____        No _____

Claim 24 of the '468 patent?  Yes _____        No _____

Claim 25 of the '468 patent?  Yes _____        No _____

Claim 26 of the '468 patent?  Yes _____        No _____

Claim 27 of the '468 patent?  Yes _____        No _____


Invalidity of U.S. Patent No. 6,049,801

Claim 1 of the '801 patent?    Yes _____        No _____

Claim 2 of the '801 patent?    Yes _____        No _____

Claim 3 of the '801 patent?   Yes _____      No _____

Claim 4 of the '801 patent?   Yes _____      No _____

Claim 5 of the '801 patent?   Yes _____      No _____

<u>Invalidity of U.S. Patent No. 6,182,078</u>

Claim 1 of the '078 patent?   Yes _____      No _____

Claim 2 of the '078 patent?   Yes _____      No _____

Claim 3 of the '078 patent?   Yes _____      No _____

Claim 4 of the '078 patent?   Yes _____      No _____

Claim 5 of the '078 patent?   Yes _____      No _____

Claim 9 of the '078 patent?   Yes _____      No _____

Claim 10 of the '078 patent?  Yes _____      No _____

Claim 11 of the '078 patent?  Yes _____      No _____

<u>Invalidity of U.S. Patent No. 6,981,007</u>

Claim 10 of the '007 patent?  Yes _____      No _____

**4. UNENFORCEABILITY**

CPi has asserted that the WhitServe patents unenforceable.  For each patent answer the following question:

Has CPi proven that it is highly probable that the WhitServe patents were obtained through inequitable conduct? Answer the question by checking either yes or no.  A "yes" answer means the WhitServe patents were obtained through inequitable conduct.  A "no" answer means the WhitServe patents were not obtained through inequitable conduct.

Unenforceability of the WhitServe patents

U.S. Patent No. 5,895,468?   Yes _____      No _____

U.S. Patent No. 6,049,801?   Yes _____      No _____

U.S. Patent No. 6,182,078?   Yes _____      No _____

U.S. Patent No. 6,981,007?   Yes _____      No _____

**5.  Damages**

**FINDINGS ON DAMAGES**

If you find that CPi or its customers infringe the WhitServe patents and that the patents are valid, answer the following question:

What amount is WhitServe entitled to for damages?

$

**6. EQUITABLE ESTPOPPEL**

**[To be supplied if question to be submitted to the jury.]**

**7. LACHES**

**[To be supplied if question to be submitted to the jury.]**

You have now reached the end of the verdict form and should review it to ensure it accurately reflects your unanimous determinations.  The Presiding Juror should then sign and date the verdict form in the spaces below and notify the Security Guard that you have reached a verdict.  The Presiding Juror should retain possession of the verdict form and bring it when the jury is brought back into the courtroom.

| DATED: _____, 20 | By:_____ |
| | Presiding Juror |
| | |