UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT

------------------------------------------------------------x
WhitServe LLC,                                            )
    Plaintiff and Counterclaim Defendant,     )
    v.                                        )    Civil Action No.
                                              )    3:06CV01935 (AVC)
Computer Packages, Inc.,                                  )
    Defendant and Counterclaim Plaintiff; and )
    v.                                        )
                                              )
Wesley W. Whitmyer, Jr.                                   )
    Third Party Defendant.                    )
------------------------------------------------------------x

**WHITSERVE'S RESPONSE TO DEFENDANT'S PROPOSED POST-TRIAL FINDINGS
OF FACTS AND CONCLUSIONS OF LAW REGARDING PATENT
<u>UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT</u>**

I.    INTRODUCTION

    As with its claims of invalidity and non-infringement, CPi's assertions of inequitable conduct are not supported by the record. The jury found that CPi willfully infringed the '468, '801 and '078 patents and that its assertions of invalidity in view of the PerfectLaw 2.0 manual and system were not reasonable. Despite this finding by the jury that the PerfectLaw docketing system was not invalidating prior art, CPi asserts that it is entitled to a finding of inequitable conduct based solely on the assertion that the PerfectLaw docketing system was material to patentability and that the manual and system were not cumulative to the information already before the Examiner. The most obvious flaw with CPi's argument is that the PerfectLaw 2.0 manual and system are not material because the jury in this case sustained validity of the WhitServe patents in view of this and other prior art. In another attempt to support such a

1

conclusion, CPi's expert, Dr. Alexander, provided incomplete analysis as to the materiality of this information by knowingly failing to consider the cumulative prior art before the Examiner during the prosecution of these patents. Dr. Alexander's incomplete analysis of cumulative prior art was brought to his attention 3 years before trial. Yet, Dr. Alexander maintained his studied ignorance in order to improperly maintain his belief that the PerfectLaw docketing system was material to patentability. Since CPi bore the burden of demonstrating that the PerfectLaw docketing system and manual were not cumulative over the prior art before the Examiner, CPi has failed to demonstrate that this information was material as a matter of law.

CPi's expert also improperly disregarded the fact that Mr. Whitmyer disclosed the relevant features of the PerfectLaw docketing system to the Examiner. On top of these failures of proof, CPi completely skirts its burden of showing that Mr. Whitmyer possessed or knew of the PerfectLaw 2.0 manual and that Mr. Whitmyer had the specific intent to deceive the Examiner. Knowing that the record is completely devoid of supporting evidence, CPi does not provide any finding of fact that sets forth any intent by Mr. Whitmyer to deceive the Examiner. For these reasons, CPi's proposed findings of fact and conclusions of law should be rejected.

## II.    STATEMENT OF FACTS

Wesley W. Whitmyer, Jr. filed U.S. Patent Application No. 08/726,999 on October 7, 1996. (*See* PLT 002 at WSL 9393.) The '999 Application stated that:

> The invention relates to an automated system for preparing reminders and soliciting replies for <u>client due dates</u>, and more particularly to a device and method which communicates reminders and receives replies over the Internet.

(*See* PLT 002 at WSL 9409, emphasis added.)

2

Included in the specification of the '999 Application was a description of docketing systems used by law firms.

> Several systems have been developed for facilitating some of the functions which professionals must perform. Perhaps the most common of such systems is the standard docketing system, which typically contains a <u>database of deadlines</u>. The docketing system <u>notifies the professional</u> of each <u>upcoming deadline</u> a preset time period before the deadline by printout, attached terminal, or networked computer.
>
> A disadvantage of docketing systems, however, is that such systems aid in only one of many steps which the professional must perform, that step being examining a calendar periodically to notice upcoming deadlines...

(*See* PLT 002 at WSL 9409-9410, emphasis added.)

Mr. Whitmyer testified that when he drafted the '999 Application, his law firm was using the PerfectLaw docketing system. (Trial Transcript, pp. 43:9-44:22.)  Mr. Whitmyer testified that he drafted the background section with the intent to describe how the material aspects of the docketing system used at his law firm worked.  (Trial Transcript, pp.  43:9-44:22, 91:4-92:20, 229:9-13, 230:21-24, 234:14-17.)  Dr. Sayward, who looked at the PerfectLaw docketing system himself during the timeframe of 1994-1996, testified that the description of known docketing systems in the background section of the '468 patent was an accurate description of the PerfectLaw system. (Trial Transcript, pp. 948:2-949:5; 949:22-25.)  Dr. John Duncan, the president of EDSI, who sold the PerfectLaw system, agreed.[1] (Trial Transcript, pp. 43:9-44:22, 945:11-949:5.)  Furthermore, despite CPi's repeated questions to the contrary, Mr. Whitmyer consistently testified that PerfectLaw does not contact the client but is a reminder system for attorneys as disclosed in the background section of the '468 Patent. (Trial Transcript, pp. 241:8-23.)

---

[1] Dr. Duncan obtained a Ph. D. in electrical engineering from the University of Michigan and served as the head of the computer science department at the University of Miami, prior to serving as the president of Executive Data Systems.

3

In order to ensure that the Examiner considered the manner in which known docketing systems functioned when assessing patentability, Mr. Whitmyer filed an IDS and directed the Examiner's attention to these docketing systems. (*See* PLT 002 at WSL 9436.)

During the prosecution of the '999 Application, the Examiner rejected the claims under 35 U.S.C. §103(a) over Linstead (U.S. Patent No. 5,548,753), Meske, Jr. et al. (U.S. Patent No. 5,530,852) and Tondevold et al. (U.S. Patent No. 5,410,646). (*See* PLT 002 at WSL 9439-9445.) The Examiner also stated that he had considered patentability of the claims in view of Leedom, Jr. (U.S. Patent No. 5,329,447). *Id.*

Leedom, Jr. (U.S. Patent No. 5,329,447) is entitled "High integrity computer implemented docketing system" and discloses "[a] computer implemented deadline docketing system for receiving, organizing and reporting future deadline calendar dates." (PLT 349, Abstract) Leedom discloses the use of a database that stores "future calendar date signals associated with a unique case record" and the use of an "automatic calendar date calculation means for docketing automatically tickler dates, determined from the operator entered calendar date." (PLT 349, col. 5:28-30; 9:17-18.) Leedom further discloses providing "a notification to the practitioner responsible for the corresponding case of all deadline calendar dates entered into the system" and utilizing a "daily docket report generating means for listing all calendar dates corresponding to signals stored in the system grouped by date and grouped by practitioner responsible for the corresponding law cases identified in the report." (PLT 349, col. 6:13-15, 5:23-27.)

Dr. Sayward and Dr. Duncan offered uncontroverted testimony that the docketing system described in the Leedom patent is not materially different from the PerfectLaw docketing system. (Trial Transcript, pp. 602:21-605:1, 949:6-950:12). Dr. Alexander, on the other hand, testified

4

that he did not consider the Leedom patent when providing his opinion of the materiality of the PerfectLaw Docket 2.0 manual and system. (Trial Transcript, pp. 824:19-828:1). Dr. Alexander's deficient analysis in failing to properly consider the prior art that was already before the Examiner was brought to his attention 3 years before trial, yet he maintained his studied ignorance. *Id.*

In response to the Examiner's rejection, Mr. Whitmyer differentiated the claimed invention from the prior art on a number of grounds. Mr. Whitmyer argued:

> The present invention as claimed, on the other hand, automates the actions themselves, thereby significantly reducing the human input required to effectuate, and improving the quality and reliability of, professional services. As recited in independent claims 1, 9 and 24, the present invention includes "software executing on [a] computer for automatically querying Ia] database by date to retrieve a client reminder", "software executing on [a] computer for automatically generating a client response form based on the retrieved client reminder", and "software executing on [a] computer for automatically transmitting the client response form to the client." These actions eliminate the need for the human preparer as taught by Linstead.
>
> Moreover, the present invention as claimed includes "a database containing a plurality of client reminder," and software for automatically querying a database <u>by date</u> to retrieve a client reminder. The claimed client reminders included deadlines for the services to be rendered. (Specification, page 5. line 20). As explained in the specification at page 5, lines 21-29 and page 7, lines 6-13, querying the database by date, as required by all claims, means identifying those reminders with impending deadlines and discarding those without impending deadlines. Thus, the present invention is a system where a large number of reminders can be stored, each reminder including a date field.

(*See* PLT 002 at WSL 9464-9465.) In response, the Examiner disagreed with Mr. Whitmyer's argument that querying by date meant querying by the values attributed to a date field. (*See* PLT 002 at WSL 9474.) As a result, Mr. Whitmyer amended the claims to explicitly include this feature. (*See* PLT 002 at WSL 9477-9480.)

5

After the amendment, the Examiner allowed the '468 patent and stated:

> The prior art of record does not teach or fairly suggest the generation and transmission of a form over the internet subsequent to the automatic retrieval of the reminder as claimed. In other words, the prior art of record does not teach or fairly suggest the "<u>client reminder comprising a date field</u>", the step of "<u>generating a client response..</u>" and the step of "<u>establishing a communication link between (said) computer and the Internet</u>" as recited in the amended claim 24 and in all other amended independent claims 1, 5, and 9.

(*See* PLT 002 at WSL 9487.)

### III.   STATEMENT OF LAW

Faced with baseless charges of inequitable conduct akin to CPi's, the Federal Circuit has expressed that:

> the habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps. They get anywhere with the accusation in but a small percentage of the cases, but such charges are not inconsequential on that account. They destroy the respect for one another's integrity, for being fellow members of an honorable profession, that used to make the bar a valuable help to the courts in making a sound disposition of their cases, and to sustain the good name of the bar itself. A patent litigant should be made to feel, therefore, that an unsupported charge of "inequitable conduct in the Patent Office" is a negative contribution to the rightful administration of justice. The charge was formerly known as "fraud on the Patent Office," a more pejorative term, but the change of name does not make the thing itself smell any sweeter.

*Burlington Industries, Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988). "'Inequitable conduct' is not, or should not be, a magic incantation to be asserted against every patentee. Nor is that allegation established upon a mere showing that art or information having some degree of materiality was not disclosed. To be guilty of inequitable conduct, one must have intended to act inequitably." *FMC Corp. v. Manitowoc Co., Inc.,* 835 F.2d 1411, 1415 (Fed. Cir. 1987.)

6

"The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n. 3 (Fed. Cir. 2009.) "The relevant 'conditions of mind' for inequitable conduct include: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Id.* at 1327.

"[T]he accused infringer must prove both materiality and intent by clear and convincing evidence." *Id.* at 1325 n. 5. "If the requirements of materiality and intent are met, '[t]he court must then determine whether the questioned conduct amounts to inequitable conduct by balancing the levels of materiality and intent…'" *Larson Mfg. Co. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1327 (Fed. Cir. 2009.)

IV.   **ARGUMENT**

   A.   **The PerfectLaw Docketing System And Manual Was Not Material To Patentability**

37 C.F.R. 1.56 (1996) provides that information is material "when it is not cumulative to information already of record or being made of record in the application, and… It establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim… A *prima facie* case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence."[2]

---

[2] At DFF42, CPi relies on the testimony of Dr. Alexander that the Examiner would have rejected the claims of the '999 Application in view of the PerfectLaw manual and that the manual would have been important to the Examiner. However, CPi never established Dr. Alexander as an expert in patent law and he is not qualified to offer any legal conclusion on the question of

7

The Jury, after considering the PerfectLaw docketing system and manual, found that the '468, '801 and '078 patents were not unpatentable. (*See* Verdict Form, Doc. No. 365.) Moreover, in view of CPi's invalidity defense, the jury found that CPi willfully infringed these patents. The jury concluded that a reasonable person with knowledge of the Whitserve patents would have concluded that the WhitServe patents were highly likely to be valid. (Trial Transcript, p. 1058:13-14.) This finding of fact by the Jury makes it clear that the PerfectLaw docketing system and manual did not establish a *prima facie* case of unpatentability and as a result were not material, let alone highly material. *See Silicon Graphics, Inc. v. ATI Technologies, Inc.*, 569 F.Supp.2d 819, 831 (W.D. Wis. 2008) (holding that the court was bound by the jury's determination that the withheld reference did not anticipate claims for the purpose of adjudicating the inequitable conduct claim.)

### B. Mr. Whitmyer Did Not Withhold Material Information Regarding the PerfectLaw System.

CPi's proposed findings of fact and conclusions of law that Mr. Whitmyer withheld material information regarding the PerfectLaw system are erroneous. As discussed above, the '999 Application provided a description of docketing systems used by law firms, including the PerfectLaw system, to the Examiner. (Trial Transcript, pp. 43:9-44:22, 91:4-92:20, 229:9-13, 230:21-24, 234:14-17, 948:2-949:5, 949:22-25.) The '999 Application stated that such docketing systems contain a database of deadlines and notify professionals of each upcoming deadline a preset time period before the deadline. (*See* PLT 002 at WSL 9409-9410.) These are the very features described by the PerfectLaw 2.0 manual that CPi claims were withheld from the

---

materiality. Dr. Alexander's testimony was speculation and should be disregarded. (Trial Transcript, p. 759:17-23.)

Examiner.[3] Both Dr. Sayward, an expert familiar with the PerfectLaw docketing system used during the 1994-1996 timeframe, and Dr. Duncan, the president of the company that created the PerfectLaw docketing system, agreed that this description accurately reflected the material aspects of the PerfectLaw system. (Trial Transcript, pp. 43:9-44:22, 945:11-949:5, 948:2-949:5, 949:22-25.) Mr. Whitmyer consistently testified that PerfectLaw does not contact the client but is a reminder system for attorneys as disclosed in the background section of the '468 Patent. (Trial Transcript, pp. 241:8-23.) Furthermore, to ensure that the Examiner considered this aspect of docketing systems, Mr. Whitmyer specifically called this section of the application to the Examiner's attention in an IDS. (*See* PLT 002 at WSL 9436.)

The Manual of Patent Examining Procedure states that a patent application includes a background section that provides:

> A paragraph(s) describing to the extent practical the state of the prior art or other information disclosed known to the applicant, including references to specific prior art or other information where appropriate. Where applicable, the problems involved in the prior art or other information disclosed which are solved by the applicant's invention should be indicated.

*See* MPEP 608.01(c). As required by the U.S. Patent Office and in fulfillment of his obligations, Mr. Whitmyer disclosed to the patent office material features of docketing systems of which he was aware, namely the PerfectLaw system.

---

[3] At DFF39, CPi asserts that the PerfectLaw 2.0 manual "is substantively identical to the claimed invention of the '468 and '078 patents." However, CPi never presented any evidence showing the PerfectLaw system and manual provided, for instance, generating a client response form pursuant to querying a database by a client reminder date field and retrieving a client reminder, transmitting the client response form to the client through a communication link to the internet, or receiving a reply to the response form from the client through the communication link, as required by claim 1 of the '468 patent. As a result, the record cited to by CPi does not identify these elements in the PerfectLaw system and manual. CPi's assertion is equally lacking with respect to the other independent and dependent claims of the '468 and '078 patents.

For this reason, it is clear that Mr. Whitmyer did not withhold material information regarding PerfectLaw from the Examiner and did not commit inequitable conduct.

C.  **The PerfectLaw 2.0 Manual Was Cumulative And Not More Material Than The Information Already Before the Examiner.**

"'[I]nformation is material when a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.'" *Larson Mfg.*, 559 F.3d at 1326. "[A] withheld otherwise material reference is not material if it is merely cumulative to, or less relevant than, information already considered by the examiner." *Id.* at 1327.

For instance, the Federal Circuit in *Larson Mfg. Co. v. Aluminart Prods. Ltd.* found that the patent owner had not committed inequitable conduct when the omitted literature simply disclosed the same relevant elements as a patent that was already before the examiner. *Id.* at 1331. Relevant to this determination was the fact that the accused infringer's expert's testimony did not demonstrate that the omitted literature was not cumulative to the references already before the examiner. *Id.* at 1332; *See also Micro Chem., Inc. v. Great Plains Chem. Co.,* 103 F.3d 1538, 1550 (Fed. Cir. 1997) (finding withheld reference merely cumulative because patents disclosing the "relevant limitations of the claims" were already before the examiner); *Litton Indus. Prods.,* 755 F.2d 158, 167 (Fed. Cir. 1985) (reversing the district court's finding that a reference was not cumulative because "[w]hile the precise structural arrangements of the devices disclosed by these references differ, they have the same relative degree of materiality with respect to the claimed invention.")

In order to establish that a reference was material, it is the defendant's burden to demonstrate that it is not cumulative. *Tegal Corp. v. Tokyo Electron America, Inc.*, 257 F.3d 1331, 1350 (Fed. Cir. 2001) (affirming the district court's finding of no inequitable conduct

10

because the defendant did not satisfy its burden of demonstrating that the withheld reference was not cumulative.) "Lack of cumulativeness is an element of materiality as defined by the amended Rule 56 as well as under case law preceding it… [The defendant] has the burden to prove materiality by clear and convincing evidence. *Dimension One Spas, Inc. v. Coverplay, Inc.*, 2007 WL 2815042, *5 (S.D. Cal. 2007)

CPi did not demonstrate by clear and convincing evidence that the PerfectLaw 2.0 manual was material to the examination of the '999 Application because it is unquestioned that this manual was cumulative to the information already available to the Examiner.  WhitServe's expert, Dr. Sayward, and PerfectLaw designer, Dr. Duncan, offered uncontroverted testimony that the docketing system described in the Leedom patent is not materially different from the PerfectLaw docketing system. (Trial Transcript, pp. 602:21-605:1, 949:6-950:12).  Dr. Alexander, whom CPi relies upon to assert that this manual was material, testified that he did not consider the Leedom patent when providing his opinion of the materiality of the PerfectLaw Docket 2.0 manual and system. (Trial Transcript, pp. 824:19-828:1).  In other words, Dr. Alexander's conclusion as to materiality did not take in to account whether or not the PerfectLaw 2.0 manual and system was cumulative in view of Leedom.  The deficiency of Dr. Alexander's analysis was brought to his attention at least 3 years before trial, yet he maintained his ignorance. *Id.*  As a result, CPi has not demonstrated that it is either clear or convincing that the PerfectLaw 2.0 manual was not cumulative in view of Leedom.

The '999 Application's description of docketing systems used by law firms also renders the PerfectLaw 2.0 manual cumulative.  The relevant functions described in the PerfectLaw 2.0 manual are referred to in this description.  As testified by Dr. Sayward, Dr. Duncan and Mr. Whitmyer, this description accurately reflected the material aspects of the PerfectLaw system.

11

This further supports the conclusion that CPi has not demonstrated that it is either clear or convincing that the PerfectLaw 2.0 manual was not cumulative in view of the information already before the Examiner.

> D. There Is No Evidence That Mr. Whitmyer Knew Of Or Had The Manual During The Prosecution Of The Application Leading To The '468, '801 And '078 Patents.

"[O]ne who alleges a 'failure to disclose' form of inequitable conduct must offer clear and convincing proof of … knowledge chargeable to applicant of that prior art or information and of its materiality." *FMC Corp.*, 835 F.2d at 1415; *See Therma-Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988, 995-996 (Fed. Cir. 1995) (holding that a finding of inequitable conduct cannot be supported because there was no evidence that the inventor had knowledge of the relevant information during the pendency of the application); MPEP § 2001.04 (6th Ed. Rev. 2, 1996) ("The duty applies to contemporaneously or presently known information. The fact that information was known years ago does not mean that it was recognized that the information is material to the present application").

For instance, in *Nordberg, Inc. v. Telsmith, Inc.*, the Federal Circuit recognized that a defendant does not satisfy its burden of showing that the inventor had knowledge of a prior art document by simply showing that the document was in the files of the inventor's place of work. *Nordberg, Inc. v. Telsmith, Inc.*, 82 F.3d 394, 396-397 (Fed. Cir. 1996); *See also Kolmes v. World Fibers Corp.*, 107 F.3d 1534, 1542 (Fed. Cir. 1997) (affirming judgment of no inequitable conduct because there was no evidence that the inventor saw a document received by inventor's office during the pendency of the patent application).

Similarly, the Federal Circuit in *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.* held that the defendant failed to prove inequitable conduct because it "failed to elicit any testimony or

12

submit any other evidence indicating that [the patent owner] knew what the [document] said [during the relevant period]… [T]he district court may infer facts supporting an intent to deceive from indirect evidence… But no inference can be drawn if there is no evidence, direct or indirect, that can support the inference." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1368 (Fed. Cir. 2008)

Even further, establishing that an inventor has general knowledge of the prior art is not sufficient to demonstrate that the inventor has knowledge of specific functions or attributes.  As a result, in *Function Media, L.L.C. v. Google, Inc.* the Eastern District of Texas held that the defendant did not establish inequitable conduct because while the inventor testified that he had general knowledge of the relevant prior art system but the defendant did not establish that the inventor had specific knowledge of the functions in question. *Function Media, L.L.C. v. Google, Inc.*, 2010 WL 272488, *2-3 (E.D. Tex. 2010).

CPi's failure to establish that Mr. Whitmyer committed inequitable conduct is accentuated by the fact that CPi did not present any evidence showing that Mr. Whitmyer knew of or had possession of the PerfectLaw 2.0 manual during the prosecution of the '468, '801 or '078 patents.  Mr. Whitmyer testified that he didn't know where the PerfectLaw 2.0 manual came from. (Trial Transcript, p. 232:10-13).  Although Mr. Whitmyer acknowledged that his firm may have received a copy of the PerfectLaw 2.0 manual, CPi presented no evidence of when the firm received the manual or Mr. Whitmyer possessed it or knew of it during the relevant period. (Trial Transcript, p. 231:21-24).

13

In fact, CPi's own expert, Dr. Alexander, testified that he did not know where the PerfectLaw 2.0 manual came from.

```
12   Q   Whose files did this come from?
13       MR. STRATE: Your Honor, objection.  I
14   don't know how Dr. Alexander can know that.  Does he
15   have a basis for knowing whose file this came from?
16       THE COURT: On cross-examination ask him.
17   BY MR. SHARROTT:
18   Q   Dr. Alexander, please continue.
19   A   I'm not exactly sure.
```

(Trial Transcript, p. 754:12-19.)

This further supports the conclusion that CPi has not presented clear and convincing evidence that Mr. Whitmyer committed inequitable conduct.

### E.   There Is No Evidence That Mr. Whitmyer Intended To Deceive The Examiner.

"[I]nequitable conduct requires not intent to withhold, but rather intent to deceive." *Larson Mfg.*, 559 F.3d at 1327. In order to infer intent there "must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Id.* at 1340. "Relatedly, just as merely withholding a reference cannot support an inference of deceptive intent… so too an accused infringer cannot carry its threshold burden simply by pointing to the absence of a credible good faith explanation." *Id.* at 1340-41.

Intent must be demonstrated by affirmative evidence. For instance, in *Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1322 (Fed. Cir. 2010) the Federal Circuit affirmed the holding of no inequitable conduct because the defendant failed to produce any "affirmative evidence of intent" and relied only on the materiality of the non-disclosed reference.

Furthermore, evidence that merely shows that the inventor was careless or acted with gross negligence is insufficient to show the requisite intent. *See Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1351–52 (Fed. Cir. 2002); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1259 (Fed. Cir. 2000) ("A party alleging that a patent is unenforceable because of the patentee's failure to disclose material information to the PTO must offer clear and convincing evidence that the patentee intended to mislead the PTO. The omission must be made with the specific intent to mislead, not merely from carelessness in the performance of a duty.")

As with all other aspects of its claim of inequitable conduct, CPi did not present any evidence at trial that Mr. Whitmyer intended to deceive the Examiner. Mr. Whitmyer testified that he drafted the background section of the '999 Application with the intent of disclosing the material aspects of the PerfectLaw docketing system. (Trial Transcript, pp. 43:9-44:22, 91:4-92:20, 229:9-13, 230:21-24, 234:14-17.) Mr. Whitmyer's IDS confirms that he intended to bring these systems to the Examiner's attention, not to deceive the Examiner. (*See* PLT 002 at WSL 9436.) CPi did not offer any contrary evidence.

CPi's lack of evidence is highlighted by the fact that each and every proposed finding of fact is directed to the materiality of the PerfectLaw 2.0 manual and system. CPi does not identify or propose any facts relating to Mr. Whitmyer's intent. It is clear that CPi's argument is that Mr. Whitmyer's intent is demonstrated by the materiality of the PerfectLaw 2.0 manual and system. However, such a proposition has been explicitly rejected by the Federal Circuit. *See e.g. Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1322 (Fed. Cir. 2010)

V.    **Conclusion**

The jury found that the PerfectLaw system and manual were not invalidating and that a reasonable person would not believe they were invalidating. CPi presented no evidence of specific intent by Mr. Whitmyer to mislead the patent office. As a result, CPi has not presented clear and convincing evidence that Mr. Whitmyer committed inequitable conduce and their proposed findings of fact and conclusions of law should be rejected.

Respectfully submitted,

August 10, 2010

/s/ Gene S. Winter
Gene S. Winter, ct05137
Christopher H. Strate, ct26931
Walter B. Welsh, ct27210
Michael Kosma, ct27906
ST.ONGE STEWARD JOHNSTON & REENS LLC
986 Bedford Street
Stamford, Connecticut 06905
Telephone: (203) 324-6155
Facsimile: (203) 327-1096
Email: lit@ssjr.com

ATTORNEYS FOR PLAINTIFF AND
COUNTERCLAIM DEFENDANT WHITSERVE LLC

## CERTIFICATE OF SERVICE

This is to certify that on this 10th day of August, 2010, a true and correct copy of the foregoing **WHITSERVE'S RESPONSE TO DEFENDANT'S PROPOSED POST-TRIAL FINDINGS OF FACTS AND CONCLUSIONS OF LAW REGARDING PATENT UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Alfred U. Pavlis
Daly & Pavlis, LLC
107 John Street
Southport, Connecticut 06890

John A. Krause
Douglas Sharrott
Marc J. Pensabene
Jessica Hiney
FITZPATRICK, CELLA, HARPER & SCINTO
1290 Avenue of the Americas
New York, NY 10104-3800
T 212.218.2100
F 212.218.2200

Wesley W. Whitmyer, Jr.
986 Bedford Street
Stamford, Connecticut 06905

___8/10/2010___
Date